### The People on the relation of Addison P. Brewer v. James H. Kidd.

*Power of sale of public lands in this state, vested exclusively in the federal government.* Under the provisions of Article IV., § 3, of the constitution of the United States, and of § 4 of the act of June 15, 1836, admitting Michigan into the Union as a state, the power of sale and disposition of all vacant and unsold public lands of the United States, within this state, and of prescribing the rules, regulations, officers, agencies and the whole course of proceedings for effecting such sales, is vested exclusively in the federal government, until the sale is consummated by the issuing of a patent. Until the title of the United States has been divested, such lands do not become in all respects subject to the local laws of the state, like the great mass of other property within its limits.

*State courts no authority over United States land matters: Injunction: Proceedings for contempt.* The courts of this state have no authority, upon a bill filed for that purpose solely, to restrain by injunction the proceedings by the receiver and register of the United States land office, acting officially under the instruction of the commissioner of said land office, to sell, at public sale, as public lands of the United States, lands for which patents have never issued, notwithstanding such lands were subject to private entry, and all the steps towards a purchase thereof at private sale, precedent to the issuing of the patent, and including the payment of the purchase price, have been duly taken; and a judgment of such court, in proceedings for contempt, imposing a fine upon such officers for having violated such injunction, cannot be sustained.

*What considered, in proceedings for contempt.* Whether in proceedings for contempt in disobeying an injunction, the court can consider the facts brought out by the answers to the interrogatories filed, showing want of jurisdiction, or can look only to the case made by the bill:—*Quære?*

*Sale of public lands, incomplete till patent issues.* Under the system of sale of public lands, adopted by the United States authorities, the action of the register and receiver of a local land office in making or refusing a sale are not conclusive upon the purchaser or the government, and the proceedings or official action necessary for a completed sale must be regarded as *in fieri*, and only in progress towards completion, until finally consummated by the issuing of a patent, which divests the federal government of the title and exhausts its power of sale.

*Power to interfere with United States land matters.* While the proceedings remain thus *in fieri*, no power, outside of that of the federal government, has any

right to interfere with the proceedings, or even to adjudicate upon their validity, for the mere purpose of controlling or restraining such proceedings of the federal government or any of its officers or agencies in relation to the subject matter of the sale.

*Official action: Presumption in its favor.* Where the bill for the injunction to restrain the proceedings in such case alleges that the defendants therein claim to be acting officially as register and receiver of the land office, and that they had, as such, advertised the lands in question for public sale, and it was their official action in making the sale that was complained of and sought to be restrained, such action of said officers must be presumed, in proceedings against them for contempt in violating such injunction, to have been in accordance with the proper instructions of the proper federal authorities.

*Heard July 12. Decided October 4.*

Appeal in Chancery from Midland Circuit.

The opinion contains a statement of the case.

*Crofoot & Brewer* and *C. I. Walker,* for the relator.

*Standish & Ballard,* for the respondent, were stopped by the court.

CHRISTIANCY, J.

This is an appeal from the judgment of the circuit court for the county of Midland, in chancery, in proceedings for contempt, imposing a fine upon the respondent, Kidd, for having violated an injunction issued by that court, in a cause wherein Brewer, the relator, was complainant, and said James H. Kidd and one Osmond S. Tower were defendants. The defendant, Kidd, was the register of the United States land office at Ionia, Michigan, and Tower was the receiver. The bill was filed solely to restrain them, by injunction, from making a public sale of certain lands, as *public lands of the United States,* which the relator claimed to have previously purchased at said land office and obtained duplicate receipts for, but for which no patents had been issued. And the alleged contempt consisted in making such sale, in disregard of the injunction. The answers of the respondents, Kidd and Tower, to the interrogatories filed

23 MICH.—56.

under the proceedings for contempt, show that the previous sale of these lands, under which Brewer claims, had been canceled by the secretary of the interior, on appeal to him from the decision of the commissioner of 'the general land office, on the ground that the lands were not in market and subject to private entry at the time of Brewer's alleged purchase; and that they must be advertised and offered at public sale; and that the defendants, as *register* and *receiver*, had made the sale in obedience to this decision and the express orders of the commissioner of the general land office, carrying out this decision of the secretary.

These answers, which were not controverted by any counter proof, if we were at liberty to consider them, show clearly an entire want of jurisdiction in the court to issue the attachment or to entertain the suit for that (which was its only) purpose.

This is too clear to require comment or the citation of authorities. But it is insisted by the counsel for the relator, that upon the proceedings for contempt in disobeying the injunction, we can look only to the case made by the bill; and that the defendant cannot avail himself, nor can the court consider, the facts brought out by the interrogatories showing the want of jurisdiction. Whether this position is sound under our statute (*Comp. L.*, § *4092*), which gives the relator the right to controvert the answers by counter proof (but which was not here attempted), we need not determine; as we are all of opinion that the want of jurisdiction sufficiently appears on the face of the bill.

The bill sets forth, in substance, that at various times, in the months of October and November, 1866, the complainant applied at the United States land office, at Ionia, for the purchase, at private sale, at one dollar and twenty-five cents per. acre, of the several tracts of land in question, which were represented by the books and plats in the office

of the register of said land office, as public lands of the United States, subject to private entry at the price of one dollar and twenty-five cents per acre; that he received from the then register of said land office, Alexander A. Stevens, the usual certificate that such lands were subject to private entry at the price aforesaid; that complainant presented said application and certificates to the receiver of said land office and made payment of the purchase price, in cash, land scrip and land warrants; that he made such entries and purchases in good faith; and avers that said lands were, at the time of such respective entries, liable to private entry; and that he thereby became the purchaser of said lands from the United States, the equitable owner thereof, and entitled to patents therefor; but that he has never received such patents.

The bill then alleges that the defendant, " Kidd as register, and Tower as receiver of said land office at Ionia, wholly ignoring complainant's rights, and claiming to act under instructions from the commissioner of the general land office of the United States, have, as such register and receiver of said Ionia land office, advertised said lands, with others, for sale at public auction, on the 10th day of November, 1869;" that complainant fears that, unless restrained by this honorable court (the circuit court for the county of Midland, in chancery), the said Kidd and Tower, as such register and receiver, will proceed to sell said lands, and thereby create a cloud upon complainant's title, etc.; that if such sale should take place, the lands would probably be sold to divers persons, by which almost endless litigation would ensue from such complication of the title.

The bill then, as the sole relief asked, prays for an injunction to restrain the register and receiver, their clerks, agents and servants, from selling the lands so advertised on the 10th day of November, 1869, or at any other time, till

the further order of this court, until the rights of the complainant, under his said purchase, shall have been judicially determined; and, if complainant shall so establish his title, then, for a perpetual injunction against such sales.

By § *3, Art. IV,* of the constitution, congress has full power to dispose of the public lands of the United States and to make all needful rules and regulations respecting the same. By the fourth section of the act of June 15, 1836, for the admission of the state of Michigan into the Union,—assented to by the people of Michigan in convention,—neither "the people, legislature or other authorities of the state of Michigan" are to have "any authority or right to interfere with the sale, by the United States, and under their authority, of the vacant and unsold lands within the limits of the said state."

Under these provisions, the power of sale and disposition of the public lands, and of prescribing the rules, regulations, officers, agencies and the whole course of proceedings, for effecting such sales, is vested exclusively in the federal government, until the sale is consummated by the issuing of a patent to the purchaser, which alone (in ordinary cases like the present, at least) divests the title of the United States and vests it in the purchaser, when, for the first time, it becomes in all respects subject to the local laws of the state, like the great mass of other property within its limits.

Congress has, from time to time, provided such system and mode of proceedings for the sale of the public lands, as, in its own wisdom, it deemed proper for that purpose. It is quite unnecessary here to examine this legislation. The principle of the whole, so far as it relates to any question here involved, is expressed in the first section of the act of July 4, 1836 (*5 Stat. at Large, p. 107*), which provides that "from, and after, the passage of this act, the executive duties now prescribed, or which may hereafter be prescribed

by law, appertaining to the survey and sale of the public lands of the United States, or in any way respecting such public lands, and also such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the government of the United States, shall be subject to the supervision and control of the commissioner of the general land office, under the direction of the president of the United States."

Under the system of sale which has been provided, the action of the register and receiver of a local land office, in making or refusing a sale, is not conclusive upon the purchaser or the government. Such register and receiver are bound to follow the instructions given and the rules prescribed by the commissioner of the general land office, who might reverse or overrule their action; and the president, through his proper secretary (formerly the secretary of the treasury, now the secretary of the interior,—*9 Stat. at Large, p. 395*), may, on appeal control the action of the commissioner.

In carrying into effect the system of sales of the public lands (which, especially since the grant of swamp lands to the various states in which they lie, the grants to states and railroad companies for railroad purposes, and the great variety of other grants and reservations for specific purposes, has of necessity become voluminous and complicated), many errors are liable to, and must naturally and necessarily, occur, which must be subject to correction somewhere before a patent issues, as well after the initiatory sale at the local land office, as before. And this power of correction, being a necessary incident to the power of sale, must belong exclusively to the federal government, which may exercise it in such manner as it may see fit to provide. And, notwithstanding the inchoate purchase at the local land office and the issuing of the duplicate receipt by the

receiver, the proceedings or official action necessary for consumation of a sale must be regarded as *in fieri*, as only in progress towards completion, until finally consummated by the issuing of a patent, which divests the federal government of the title and exhausts *its* power of sale. This remark applies equally to the purchase claimed to have been made by the relator, and to the sale, which he avers was about to be made at the local land office.

While the proceedings remain thus *in fieri*, or in other words, while the sale is yet in progress and incomplete, it is too obvious to require either argument or the citation of authorities to show that no power, outside of that of the federal government, can have any right to interfere with the proceedings, or even to adjudicate upon their validity, for the mere purpose of controlling or restraining such proceedings of the federal government, or those of any of its officers or agencies, in relation to the subject matter of the sale. If this could be done, if such proceedings were liable to be thus restrained by injunction from the courts of the several states in which the public lands may happen to lie, the power of sale in the federal government might be, at once, and effectually, checked and controlled. It is quite unnecessary and immaterial, in this case, to inquire whether any such power may have been given to the federal courts (where, if anywhere, it might appropriately have been lodged) so long as the state courts do not possess it.

We have been cited to no authority, and are aware of none, which would authorize a state court to issue an injunction restraining the register and receiver from making the sale advertised in the present case; and we can see no ground upon which such a jurisdiction could be maintained which would not also authorize the issuing of a *mandamus* by a state court, to compel the performance, by the same officers, of their official duties.

The authorities, cited to show that the issuing of a patent is not, for all purposes, conclusive upon the rights and equities of claimants, and that upon a bill in equity, filed in a state court, the patentee may be made a trustee for a conflicting claimant, who can show a greater equity, and that the patent has been improperly obtained, have no bearing upon the question of jurisdiction to restrain these officers from making the sale. This is a remedy against the *patentee*, in a proceeding against *him*, a remedy which admits the validity of the sale to convey the title, and not against the officers to restrain them from making the sale.

And just as little bearing have the class of authorities cited to show that an action may be maintained against a man who happens to be an officer of the federal government, for acts done under claim of federal authority, if no such authority existed in fact. This is but the ordinary case of pleading a justification in any common-law action, under any valid authority whatever. The defendant, to defeat the action, must establish his justification, by showing that the acts complained of come within the authority under which he attempts to justify. If he establishes this, he succeeds in his defense; if not, he fails. The most that such cases tend to show, if they show any thing relating to the facts of this case, is that the defendants, mentioned in the injunction bill, might be held liable to damages, as individuals, in an action on the case, if they, in fact, wrongfully proceeded to sell without the authority, or contrary to the laws, of the federal government.

The bill in this case shows that the defendants, Kidd and Tower, claimed to be acting officially as register and receiver; that they had, *as such*, advertised the land; and that it was their official action in making the sale which complainant feared, and that this sale, this official action, was what was sought to be restrained. For all the purposes of

this case that action must be presumed to have been in accordance with the proper instructions of the commissioner of the general land office, and of the president, through the secretary of the interior. In fact the bill, though it sets forth expressly that the defendants, as such register and receiver, claiming to act under instructions from the commissioner, advertised, etc., nowhere undertakes to negative such instructions. But we do not base our conclusions upon this omission, because in our view, the question whether the register and receiver were proceeding according to, or in violation of, the laws of congress and the instructions of the commissioner, is one which the circuit court for Midland county, in chancery, had no jurisdiction to try for the mere purpose of restraining and preventing a sale.

The judgment or decree of that court, against defendant Kidd, in the attachment proceedings (which is all that is now before us), must be reversed, and the defendant must recover his costs in both courts against the relator.

The other Justices concurred.