## TAWAS & BAY COUNTY RAILROAD COMPANY, RELATOR V. THE CIRCUIT JUDGE FOR IOSCO COUNTY.

*Mandamus to vacate injunction to restrain use of road-bed by railway company—Identity of corporations—Final order in equity—Transmutation of debtor's assets—Jurisdiction in mandamus.*

A firm of loggers agreed to build a tram railway and contracted with the corporation controlling it to carry their lumber at certain rates.   The corporation afterward assigned, and its assets went into the hands of one of the parties with whom the agreement to build was made, and through him became the property of a railway company in which he was a principal stockholder.   This company refused to fulfill the agreement for transportation, and the loggers sued out a preliminary injunction restraining it from running over so much of the road as they had built except on condition of carrying their lumber at the rates agreed on.   *Held*, that the agreement was no more than an ordinary executory contract, was not enforcible in equity, and gave complainants no more control than other contractors over the road-bed; that the preliminary injunction was a final order and void, and that mandamus would lie to set it aside.

The transfer of the assets of one corporation to another does not establish any legal identity between them.

A judgment creditor only can inquire into the transmutation of his debtor's assets; and then he can only reach assets equitably belonging to his debtor.

Any decree or order divesting possession or rights on a preliminary inquiry is illegal and void; and when made in equity is a final order and appealable, though an appeal is not necessary to rescind it.

Mandamus is a prerogative writ designed to afford a summary and specific remedy where the party applying for it would otherwise be subjected to serious injustice.

The jurisdiction of the Supreme Court in mandamus cases is not statutory but plenary.   The Constitution gives it supervision over all inferior

tribunals and enjoins the abolition as far as possible of the distinction between legal and equitable jurisdictions. The writ may therefore issue even where other remedies exist, if they are not sufficiently speedy to prevent material injury.

The fact that there is a specific remedy in equity does not necessarily oust the jurisdiction of a common law court, but only appeals to its discretion, which may be exercised where the circumstances call for prompt interference by the courts.

Mandamus lies to vacate an illegal injunction where the party affected thereby would otherwise have to submit to serious injury, or to the risk of proceedings for contempt in disregarding it.

MANDAMUS. Submitted Oct. 19. Granted Oct. 27.

*Hatch & Cooley* for the writ.

*Holmes, Collins & Stoddard* and *W. T. Mitchell* against.

CAMPBELL, J. An application is now made, after cause shown, for a peremptory mandamus to compel the respondent to set aside an order granting an injunction, which is claimed to be beyond his authority, and which he has refused to disturb. As the grounds of the motion do not rest on the mere impropriety but upon the illegality of this order, and as some points of jurisdiction are raised both as to that of the respondent and our own, a brief reference to the nature of the controversy is necessary. It will not be important to go into particulars very far.

The injunction was issued in a suit in equity brought in the circuit court for the county of Iosco, by Dewitt C. Welch and J. Frederick Behr against Charles M. Prescott and Charles M. Averill and the Lake Huron & Southwestern Railway Company, and the Tawas & Bay County Railroad Company. The grievance complained of was the refusal of the latter company to carry logs and lumber for complainants at rates and in the manner agreed upon in a contract made in April, 1878, by a firm named Hall, Shook & Co., of which complainants were members, and to whose rights they claim to have succeeded. The grievance is alleged to have arisen out of the following state of facts:

Hall, Shook & Co., having purchased the lumber on certain lands not very far from Tawas City, contemplated making a private tramway to that place for their own convenience. Prescott and some other persons persuaded them to give up their private scheme and aid in another for the construction of a longer tramway reaching beyond their lumber grounds, to be in the hands of a corporation organized under the General Laws relating to tram railways. Hall, Shook & Co. declined taking stock but agreed to build a few miles of the road for considerations moving in part from Prescott and other parties, and in part from the corporation. The agreement they made with the corporation required the latter to carry their lumber of specified kinds, taken from the lands referred to, at seventy-five cents a car load of four tons—the cars to be loaded by Hall, Shook & Co. and drawn to Tawas by the corporation. No time was fixed within which the lumber carriage was to be completed, except that it embraced the lumber from certain lands. The road was completed.

The bill after showing this, sets out that debts were created, and in course of time an assignment made by the corporation under which Prescott became purchaser of the assets and through him they passed to the Tawas & Bay County Railroad in which he is principal stockholder. This corporation is a railroad and not a tram road company and its road is considerably longer than the other. There are allegations of frauds on the part of Prescott against the interests of the original corporation in managing to absorb the assets.

It is then averred that the new company refuses to carry out the old agreement and requires large prices, and otherwise violates its supposed duty to complainants.

The circuit judge enjoined the relator by preliminary injunction from running over so much of the road as was built by complainants, except on condition of carrying logs and lumber on the terms agreed upon in April, 1878.

There are two considerations to be noticed on the merits of this hearing—*First*, whether the circuit court could take jurisdiction of such a case at all; and *second*, whether it had power under any circumstances, to issue such a preliminary

injunction. Upon the first question we shall only refer to a few of the general outlines of the case. The second will be dealt with separately.

This agreement was not of such a nature as to give complainants any more claim against the property and road-bed than would be possessed by any other contractors. If the price had been payable in any other way, and no lien reserved, the road would not be bound in any such way as would allow such a bill as the present to enforce a specific claim on it. The contract to run the lumber of complainants is the same in all respects as if made with anybody else, and is no more than an ordinary executory contract. If there had been no change of owners it is difficult to see how equity could have anything to do with enforcing it.

But there can be no room for claiming any legal identity between the two corporations. And before any creditor can assume to inquire into the transmutation of assets he must put himself upon the footing of a judgment creditor. In that capacity he could do no more than reach assets equitably belonging to his debtor. In any other capacity he has no concern with his debtor's doings.

It does not now occur to us in what possible way equity could relieve complainants on the facts averred.

But the present case is one where the court has undertaken to dispose of the merits without a hearing in the ordinary course of justice. The interlocutory order, as it is called, gives all the substantial relief that is prayed for. It has been decided repeatedly that any decree or order divesting possession or rights on a preliminary inquiry is illegal and void, so that no one need respect or obey it. *People v. Simonson* 10 Mich. 335; *Port Huron & Gratiot Ry. Co. v. Judge of St. Clair* 31 Mich. 456; *Salling v. Johnson* 25 Mich. 489; *McCombs v. Merryhew* 40 Mich. 721; *Arnold v. Bright* 41 Mich. 207.

Any such order made in an equity case is a final decree and appealable as such. *Barry v. Briggs* 22 Mich. 201, and above cases. But as before suggested it is more than erroneous, and is absolutely void. An appeal, though admissible,

is not necessary to rescind it. But an appeal, if resorted to, will not give speedy redress, and parties who are interfered with in such a summary way ought if possible to get some quicker relief and be saved from being obliged to take the risk of any further vexation by defending against contempt proceedings in case they disregard the injunction, as was done in *People v. Simonson* and *Brewer v. Kidd* 23 Mich. 440.

The question thus arises whether mandamus is the proper remedy. We have already practically settled this in *P. H. & G. Ry Co. v. Judge of St. Clair*, where the point was presented and decided. But it may be proper to refer to some of the reasons for so holding.

The jurisdiction of this court in mandamus cases is not statutory, but plenary, and supervision is given over all inferior tribunals by the Constitution, Art. 6, sec. 3. Under the constitution legal and equitable jurisdiction is united in the circuit courts, and it is enjoined that distinctions between the two jurisdictions shall be removed as far as possible. Sec. 5. In granting this remedy, courts are always disposed to confine it to cases where there is no other adequate specific remedy. But the existence of a remedy of another nature which is not adequate furnishes no reason for refusing it, if the necessity of justice requires it. We had occasion in *La Grange, relator v. State Treasurer* 24 Mich. 468, to consider this jurisdiction quite fully and we think the views there expressed are in accordance with the soundest authority. Mandamus is a prerogative writ designed to afford a summary and specific remedy in those cases where without it the party will be subjected to serious injustice. As pointed out by the eminent authorities there cited, it is from its very nature a remedy that cannot be hampered by any narrow or technical bounds. The right coupled with the necessity of such a vindication of it supports the jurisdiction, and the court in using its discretion, while careful not to use this writ when it is not essential, will apply it where it is.

As the English Chancery was not inferior to the King's Bench, that is reason enough why there are no precedents for the writ in chancery cases. But as explained in the cases

just cited it is well settled that the existence of a specific remedy in equity does not oust the legal jurisdiction, but only appeals to the discretion of the common law court. Mr. Spence in his treatise on Equitable Jurisdiction refers to the jurisdiction in mandamus as one which if freely exercised might have rendered much of the interference of equity needless. 1 Spence Eq. Jur. 704. In a majority of cases the usual remedies are sufficient, and the necessary delays attending them are not so serious as to require any extraordinary remedy.

But in the present case the whole business of the corporation is stopped unless the company submits to conditions which the court has no power to impose. If the officers disobey the writ they have to decide for themselves whether it can safely be done, and few persons are willing or should be compelled to act under such a pressure. An appeal always involves considerable delay, and during the interval there is room for new controversies. The case therefore is urgent, and as there is no doubt of the illegality of the order complained of, it should not be continued to menace the persons engaged in the enterprise. They should not be driven to the alternative of seeming to defy the authority of the courts.

We think a mandamus is a proper remedy and should be granted, with costs against the complainants in chancery.

The other Justices concurred.