FLETCHER PAPER CO. *v.* DETROIT & MACKINAC RAILWAY CO.

1. INJUNCTION—RAILROADS—MICHIGAN RAILROAD COMMISSION.
    Independently of some express statutory authority, the court of equity has no jurisdiction to grant a preliminary injunction restraining defendant in the bill from tearing up or interfering with a spur track connected with defendant's railway, pending the determination of the Michigan railroad commission in a proceeding before it instituted by the same complainant to secure an order of the commission requiring the railway company to transport logs over the spur track in question: no authority to preserve the *status quo* being conferred by the act creating the railroad commission (Act No. 300, Pub. Acts 1909, §§ 46, 47 [3 How. Stat. (2d Ed.) § 6524 *et seq.*]), a preliminary injunction issued for that purpose was void, and contempt proceedings thereon unwarranted.

2. CONTEMPT—INJUNCTION—VOID INTERLOCUTORY INJUNCTION.
    Contempt proceedings cannot be based on an interlocutory injunction that the court of equity had no power to issue.

Appeal from Alpena; Emerick, J. Submitted Janu-

ary 15, 1913.    (Docket No. 108.)    Decided May 28, 1913.

Contempt proceedings based on an injunction issued in a suit instituted by the Fletcher Paper Company against the Detroit & Mackinac Railway Company and another.    From a decree adjudging respondents, the Detroit & Mackinac Railway Company and the Lobdell & Churchill Manufacturing Company, guilty of contempt, both respondents appeal.    Reversed.

*Gillett & Clark,* for complainant.

*Stevenson, Carpenter & Butzel,* for defendant Lobdell & Churchill Manufacturing Co.

*Henry, Henry & Henry (James McNamara,* of counsel), for defendant Detroit & Mackinac Railway Co.

OSTRANDER, J.    Upon the record before us it is made to appear that in the month of September, 1910, the Fletcher Paper Company, as complainant, filed its bill of complaint in the circuit court for the county of Alpena, in chancery, against the Detroit & Mackinac Railway Company, sole defendant, in which it prayed that the said defendant be restrained from taking up its steel and rails on a certain spur or branch of its road, called the Tubbs branch, and that it be required to continue to operate over and upon said branch, place cars for the loading of forest products, and, as it had theretofore done, haul loaded cars to its main line and upon its main line to the points designated by complainant.    The defendant answered the bill and in its answer asked, as affirmative relief, that the complainant be enjoined—

"From in any wise molesting this defendant in the disposition of its property along such track, and from proceedings in the courts in any wise to molest or interfere with this defendant's disposition of its property along the line of this branch, and that the rights

of this defendant and the rights of the complainant respecting such branch and respecting the property on and along such branch be determined in this court and in this cause."

So much of the answer as is in its nature a cross-bill was answered by complainant, the cause was brought to a hearing, and a decree dismissing the bill of complaint was entered in May, 1911.

It is sufficient for present purposes to say that it was the theory of the complainant in the action that the court had power to compel defendant to continue to operate the said spur or branch; that it was the theory of defendant that the court had no such power and the spur or branch had no public character, it having been laid pursuant to private arrangements with a corporation other than complainant upon and over land belonging to said other corporation, upon ties furnished by it and a roadbed prepared by it, which contract relations with said other corporation were terminated and it had been ordered to remove its rails from the land. The decree was upon the merits.

Before the decree was rendered, and in January, 1911, the Fletcher Paper Company filed its petition with the Michigan railroad commission, setting up, among other things, that the Churchill Lumber Company provided the right of way, graded and placed the ties for the construction of said Tubbs branch, the Detroit & Mackinac Railway Company laid the steel and operated the branch by hauling logs over it for the said Churchill Lumber Company, for the complainant, and for one other from the time the spur was completed until on or about September 8, 1910, when it caused a portion of the rails to be removed and refused to operate the spur; that the said railway company published and filed with said commission freight tariffs, including said Tubbs branch, fixing rates for transportation of freight over and upon and from said Tubbs branch; that the Fletcher Paper

Company had in August, 1910, purchased from the Churchill Lumber Company all its rights, title, and interest in the right of way of said Tubbs branch; that it had 100,000 feet of logs banked, ready to ship out over said branch, and more than 20,000,000 feet of timber, standing and cut, tributary to said branch. Specifically the petition prayed that the said railway company be required to transport logs over and from said branch to Alpena in accordance with its published tariff M. R. C. No. 277, or any subsequent tariff.

The pendency of this proceeding before the Michigan railroad commission was brought to the attention of the court, and in its decree dismissing complainant's bill of complaint it provided that it should be dismissed "without prejudice to complainant to file its petition for relief with the Michigan railroad commission." After the entry of the said decree, before the Michigan railroad commission had decided the matter, and on July 19, 1911, the Fletcher Paper Company filed its bill of complaint in the Alpena circuit court, in chancery, against the Detroit & Mackinac Railway Company and the Lobdell & Churchill Manufacturing Company, charging as true most of the facts herein already recited, and further that it had learned on July 14, 1911, that the Lobdell & Churchill Manufacturing Company was engaged in tearing up and removing rails from the said Tubbs branch, claiming to have leased the rails from the Detroit & Mackinac Railway Company to use elsewhere. The fact that the railroad company had discontinued the operation of the branch without notice to the Michigan railroad commission is set up, as well as the claim of irreparable injury if the operation of the said branch should be discontinued and the absence of any remedy, except in equity. The prayer of the bill is that the said defendants be restrained from tearing up and removing the railroad track as now laid on the Tubbs

branch of said railroad.  Upon the filing of the bill, a temporary injunction issued, the interdict of which is—

"That you do absolutely desist and refrain from tearing up or removing the rails or in any way changing or moving the railroad track as now laid of the Tubbs branch of the said Detroit & Mackinac Railway Company, which branch is sometimes called Martindale spur,  *  *  *  until further order of this court."

It was served on the railroad company July 19th, and on the defendant Lobdell & Churchill Manufacturing Company July 21, 1911.  The complainant petitioned July 31, 1911, for an order to defendants to show cause why they should not be adjudged guilty of contempt for disobedience of the injunction.  The order issued, cause was shown, a hearing was had at which testimony was introduced, and September 11, 1911, an order was entered adjudging both defendants guilty of contempt and imposing upon each a fine of $100.  The cause is in this court upon an appeal from this order.

The questions discussed by counsel are: (1) Whether the court had jurisdiction to issue the injunction; (2) whether the former decree of the court, upon the merits, is *res adjudicata* the right of complainant to any equitable relief; (3) whether there is any evidence of a violation of the injunction.  We find it necessary to consider the first point only.

The purpose of the bill of complaint, filed in the suit in which the order appealed from was made, is to maintain a condition of things existing when the bill was filed until such time as the Michigan railroad commission ordered, or refused to order, the defendant railroad company to restore and operate the spur or branch road.  Its purpose was not to preserve property, or a *status quo* until the court should determine the rights of the parties litigant.  The court had

expressly determined that it would not grant to complainant the relief which, at the time the injunction was granted, it was seeking in another nonjudicial tribunal. It was stated by the trial court:

"The injunction in the present case was not granted in any suit to determine what the rights of these parties were in this branch. That had been determined, so far as this court is concerned, for reasons which were entirely satisfactory to the court and which I have never yet heard successfully assailed. But this was what the court intended to do by the second injunction, as it is termed, the injunction involved here. These parties had sought the jurisdiction of the railway commission. It was granted them by the laws of this State. That board exercises a jurisdiction which is different, they say, from any jurisdiction possessed by the circuit court, in chancery. Taking administration of the affairs of a railway corporation does not come under any recognized head of equity jurisdiction that I have ever heard. But they say they have it, and this court said, 'Well, if you have, this complainant shall be protected while you exercise it in this case;' and for the purpose of protecting the complainant while this railway commission proceeded to exercise this jurisdiction, to adjudicate and determine the rights of the parties, these respondents were restrained, pending the existence of that litigation, from destroying the subject-matter of the litigation, to wit, the Tubbs branch."

The bill, whatever its averments, must be treated for the purposes of this case as if the complainant invoked jurisdiction only because it had applied to the Michigan railroad commission for certain relief, which might or might not be granted, and desired, meantime, that a court of equity restrain defendants from doing anything inimical to its interests if the relief should be granted. There can be no doubt, therefore, that the circuit court, in chancery, for the county of Alpena, in granting the injunction, asserted jurisdiction to temporarily control the owners of property with respect to the use and disposition thereof, while

denying jurisdiction to determine the respective and relative rights of such owners and the complainant; the purpose being to merely prevent the doing of something until some other tribunal had determined whether it ought or ought not to be done. Respondents contend that the court has no such jurisdiction, and that the order for the injunction is void. Complainant has advanced no argument and has cited us to no authority supporting the existence of any such general jurisdiction of the court. It is not claimed that, independent of statute, a court of equity, having no jurisdiction to grant final equitable relief, has jurisdiction to grant a preliminary injunction.

The contention of complainant is that under the "statutes of the State" the court "has jurisdiction to preserve the *status quo* pending a hearing before the Michigan railroad commission." The statute referred to is sections 46 and 47 of Act No. 300, Public Acts of 1909 (3 How. Stat. [2d Ed.] § 6524 *et seq.*), which is the statute creating and prescribing the powers of the Michigan railroad commission. These sections read as follows:

"SEC. 46. This act shall not have the effect to release or waive any right of action by the State or by any person for any right, damage, penalty, or forfeiture which may have arisen or which may hereafter arise under any law of this State, and all penalties and forfeitures accruing under this act shall be cumulative, and a suit for and recovery of one shall not be a bar to the recovery of any other penalty or damage.

"SEC. 47. In addition to all the other remedies provided by this act for the prevention and punishment of any and all violations of the provisions hereof and of all orders of the commission, the commission, and likewise any person, firm or corporation interested, may compel compliance with the provisions of this act and with the orders of the commission by proceedings in mandamus, injunction or by other appropriate civil remedies."

It is possible—the point, except as herein indicated, is not presented for decision—that these provisions enlarge to some extent  the general jurisdiction of courts of equity.  But we find in them no intimation that it was intended to impose upon courts of equity the duty to restrain, or to aid, suitors to the Michigan railroad commission, or the duty to act as depositaries, or custodians, of property until the commission decides what shall be done with it.  We find no intimation of an intention to confer upon courts of equity power to control the acts of individuals, or of corporations, the character of which they may not themselves finally determine.

We are therefore of opinion that the court was entirely without jurisdiction, the injunction void, and its judgment imposing a fine in the proceedings for contempt is reversed, with costs of both courts to respondents, which costs complainant is ordered to pay. 2 High on Injunctions (4th Ed.), § 1425; *Brewer* v. *Kidd*, 23 Mich. 440.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, and STONE, JJ., concurred.  KUHN and BIRD, JJ., did not sit.