## The People on the relation of the Township of La Grange v. The State Treasurer.

*Corporations: Management of corporate affairs: Directors: Stockholders: Creditors.* It is not within the power of any court (except in proceedings to divest the corporate franchises), to interfere with the management of corporate affairs, so as to allow any but the lawful directors to manage them; and neither stockholders nor creditors can assume to sue, for the purpose of collecting property or claims on behalf of the corporation; but all such suits must be brought by the corporation itself.

LaGrange *v.* State Treasurer.

*Fraud: Directors of corporation: Misconduct: Equity: Stockholder.* Nothing but fraud and misconduct in the directors can create any equity, to allow any other person interested to seek the aid of a court, to reach what they have fraudulently and in his wrong refused to prosecute without reasonable cause for their refusal.

And where, by the law of the land, the claim set up could not be enforced in any suit which they could bring, they are not at fault for refusing to bring a useless action; and their refusal cannot empower a stockholder to bring a suit in another jurisdiction, where they could not, themselves, lawfully sue.

*Colorable suit: Staying proceedings.* The pendency of such a colorable suit is not to be regarded as any reason for staying proceedings touching the controversy, in another court, which has jurisdiction to dispose of it.

*Municipal bonds: State treasurer: Proceedings in federal courts by stockholder: Corporation.* When, by the laws of Michigan, municipal bonds deposited with the state treasurer in aid of private corporations are void, a suit to have them given up to be canceled will not be affected by proceedings commenced in a court of the United States by a stockholder of such corporation, to obtain them for the corporation, when the corporation itself could not lawfully sue the makers or depositary in any but a state court, and would not there be permitted to recover such bonds. Such proceedings are a mere evasion of jurisdiction, and it will not be assumed that any court will sanction them.

*Municipal aid bonds: State treasurer: Official custody.* Municipal aid bonds deposited with the state treasurer, under a law held unconstitutional, are in his official custody until delivered up; and he is responsible for their safe keeping and return to the makers, when demanded.

*Mandamus: Legal remedy: Equitable jurisdiction.* A *mandamus* lies to compel such return, when refused upon a reasonable demand. It is the proper remedy for enforcing a specific legal right, for which there is no other adequate legal remedy, and is not excluded by other legal remedies which are not adequate to secure the specific relief needed, nor by the existence of a specific remedy in equity. A party will not be compelled to give up a legal remedy for an equitable one, and equitable jurisdiction can never supplant legal jurisdiction.

*Replevin: Papers filed in public office: Official custody: Public policy: Mandamus.* Replevin is not a proper remedy to obtain possession of papers filed in a public office. The custody of such papers belongs to the officer in charge, and it would violate public policy to allow a sheriff or constable, under color of legal process, to intermeddle with public files. A *mandamus* to compel the custodian to deliver them up to the owner is the only safe process.

*Heard April 10. Decided April 16.*

Application for *mandamus.*

*Ashley Pond* and *Theodore Romeyn,* for the respondent.

*Daniel Blackman,* for the relator.

CAMPBELL, J.

The relator having obtained an order on respondent to show cause why certain municipal bonds, deposited with him

under the railroad aid laws, should not be delivered up, he returns that he has been served with a subpœna in a cause in equity, issued out of the circuit court of the United States for the eastern district of Michigan, under a bill filed by Joseph E. Young, of Chicago, Illinois, against respondent, relator, and the Michigan Air Line Railroad Company, to obtain the same bonds for the company.

And this return being demurred to, respondent relies on two principal grounds: *First*, that *mandamus* is not a proper remedy in such cases; and *second*, that the pendency of the chancery suit should stay it. The latter question is first in order of importance.

It is not claimed that the pendency of a suit like that referred to, can, in any way, operate as a bar to these proceedings. There is no authority for any such doctrine, and all practice is against it. The only argument insisted on, is that in such cases comity requires that this court should await the final action in that suit,—or at least that such delay is proper and desirable, and should be granted as a matter of customary policy. To ascertain how far it would be proper to do this, each class of cases must be examined as it arises, and it is not possible that there can be any uniform rule on the subject. It must always be remembered that in considering such questions, it is not usually the court where action is had, but the parties who are taking it, that must be regarded. Courts, except by appellate process, never interfere with each other's proceedings, and deal only with parties themselves.

When we look at the nature of the bill which has been filed in the United States circuit court, we find its purpose so clearly in violation of legal principles, as settled generally (and as emphatically by the United States supreme court as any where), that we cannot hesitate to regard it as one over which the court where it is pending will not assume

jurisdiction to grant relief. Its objects are not within the jurisdiction of any court of equity, as that jurisdiction has thus far been declared, and it is not very likely that any tribunal will entertain it.

We shall not consider any jurisdictional questions which depend on other than recognized and generally accepted grounds; and we shall abstain from deciding what effect might be due to the fact that it was filed in some haste, after notice of this application had been given to the railroad company, and before relators had put their papers on file here.

The bill is filed for the purpose of getting relief for a corporation created by virtue of the laws of Michigan. Complainant, although a stockholder, does not claim any immediate or personal right in, or control over, the property in controversy. He does not, and could not lawfully, seek to get possession of it. His bill rests upon the ground that it belongs to the corporation, which alone has a title and claim to it. Stockholders and creditors can only claim through the corporation itself.

It is not within the power of any court,—except in proceedings to divest the corporation of its charter franchises,—to take away the management of its affairs from the hands of the directors lawfully invested with that management, and give it into the hands of other managers. The corporate functions must be performed by corporate officers. The bill does not seek to divert this management of funds in possession, but it seeks to enforce a supposed corporate demand without the intervention of the directors.

It is perfectly evident from the whole structure of the bill (and it is only on this ground that any attempt can be made to sustain it at all) that the suit is really one in favor of the railroad company, and against the other defendants. It is as plainly a suit in their behalf as if brought in their name. That is the whole theory of the bill.

If the suit had been brought by the proper officers of the corporation, and in the corporate name, no jurisdiction could have existed except in one of the courts of the state of Michigan; because all the parties are domiciled here, and citizens and subjects of the state jurisdiction. And had the suit been brought here, there is no right involved which could lawfully invoke the appellate jurisdiction of the United States supreme court. There is no claim involved which could authorize any revision of a state decision.

In order to transfer into a court of the United States a controversy between Michigan citizens, under Michigan laws, some substantial ground must be presented which comes within some recognized rule of jurisdiction. Any merely colorable attempt would be a fraud which no court should tolerate or sanction, and in *Yawkey v. Richardson, 9 Mich., 529,* a judgment was reversed for a similar device in fraud of the courts of the United States.

The only ground relied on, is the one recognized in *Dodge v. Woolsey, 18 How. R., 331,* in which it was held, on the facts of the case, that a refusal by the directors of a company to prosecute a claim which they believed to be valid, and which was valid, and where there was no exercise of discretion properly involved, would justify a court in allowing a stockholder to file a bill on the ground that their conduct in not suing was fraudulent as against him, and in derogation of his rights and interests as a stockholder, which they had no right to abandon when they knew their duty.

The grounds on which that case was decided are fatal to this. The right there involved was one secured by the constitution of the United States, and settled by an unbroken course of decision from the Dartmouth College case down. Although the corporation suit must have been brought in the state courts, by reason of the citizenship of the parties,

yet the state decision, if against the right, was subject to review in the United States supreme court. The controversy was one which was necessarily of United States jurisdiction sooner or later, and it was a controversy directly arising under the constitution and laws of the United States.

The doctrine that the jurisdiction in favor of the stockholder does not exist, except as dependent on the culpable negligence of the directors, and that it cannot exist at all except in an extreme case, is not only very clearly laid down in *Dodge v. Woolsey,* but it has never been relaxed. In *Memphis City v. Dean, 8 Wallace, 64,* Nelson, J., uses this language in deciding the cause, after speaking of the right referred to in the former case, where the stockholder is prejudiced by the refusal of the directors to sue: " This refusal of the board of directors is essential in order to give to the stockholder any standing in court, as the charter confers upon the directors representing the body of stockholders, the general management of the business of the company. *There must be a clear default, therefore, on their part, involving a breach of duty,* within the rule established in equity, to authorize a stockholder to institute the suit in his own behalf, or for himself and other stockholders who may choose to join." And it was held in that case that failure to bring a superfluous suit would not be a ground of complaint, and would not support jurisdiction for relief.

In *Bronson v. La Crosse Railroad Co., 2 Wallace, 283,* the same judge, speaking for the court on the same subject, says: " The remedy is an extreme one, and should be admitted by the court with hesitation and caution ; but it grows out of the necessity of the case, and for the sake of justice, and may be the only remedy to prevent a flagrant wrong." And in that case, as in the later one, the stockholders intervening were refused relief.

As the only claim involved in the controversy is to obtain possession of securities which, it is held by the state courts, the legislature could not under the constitution of the state legalize, any suit by the corporation in the state courts would necessarily have been nugatory; and to a knowledge of the law on this point all persons are holden. The corporation board would not have been bound, and would not have been authorized, to begin a suit that must of necessity be decided against them. The suit in the United States court could only be justified under the decision in *Dodge v. Woolsey*, where the right was clear, and the remedy available. It is not legally possible for a refusal to sue, under these circumstances, to have been a violation of duty. And any attempt to transfer jurisdiction to other courts under such a pretext cannot, therefore, be other than a legal subterfuge, which cannot be recognized as a ground for delaying our action, and which we conceive is not in any way sanctioned by the decisions of the supreme court of the United States.

The remaining questions relate to the form of remedy. It is claimed that no such duty exists in the state treasurer as is usually enforced by the writ of *mandamus*, and that the remedy for a breach of the duty, if there be one, is in another form.

The first question that arises is whether any duty rests on the respondent, and if so, what it is.

He has, under color of official right, received in his official capacity certain bonds, which purport to be obligations of the complaining municipality. It is urged that if the aid law is invalid, the proceedings are all illegal, and his action is not official action. This is no other than an argument that all clearly illegal action by any public functionary must be regarded as unofficial action. In the case of *Osborn v. Bank of U. S., 9 Wheat., 738*, the action of a

state auditor under an invalid law was held, by reason of his official character, to create an aggravation of the grievance. In *Ryan v. Brown, 18 Mich. R., 196,* the entirely illegal action of a state officer was viewed in the same light as official misconduct. In *People v. Treadway, 17 Mich. R., 480,* the same argument was used, that unlawful acts were not official acts, and therefore not within the conditions of an official bond; but we held otherwise, as all courts have held. There can be no doubt that when a person undertakes to hold in his official custody that which has been placed there under a claim that it should be lawfully deposited in his custody, he is bound to restore it, on application of the proper party, if it does not belong to his custody. The public files and receptacles cannot be changed into private ones by any legal theories. Their custodian can never cease to be a public officer in regard to any of them. Having received them as an officer he is bound to keep them safely, until demanded by their owners, and then he is equally bound to restore them. It is no defense to such a claim of restoration that the securities are not liable to be legally enforced. It is always possible that injury may be done to a person or municipality by being subjected to litigation, and instruments which purport to be obligations, and are legally invalid, may be compelled to be given up and canceled in all cases where any possible danger can be anticipated, where there is no rule of equity to the contrary. In these cases of municipal bonds, the townships cannot be made to suffer for the legally wrongful action of their officers, and they have a right to recall the unauthorized securities. The duty of the treasurer is not discretionary. It is their absolute right to demand, and his absolute duty to surrender, what is held in the files of the office in their wrong. The duty is unconditional and it is clear.

We are then to consider whether a *mandamus* is the proper remedy for a refusal to comply with this duty.

It was urged on the argument that this writ will only lie where there is a positive statutory duty and an entire absence of any other remedy. And it is claimed that the decisions heretofore made sustain this view. We do not know of any such doctrine, and have never understood it to have been established in this state or elsewhere. In the frequent instances of application for this writ, the occasion has quite as often been to enforce duties not imposed by statute, as obligations which were statutory. There may very possibly be found isolated expressions, which, apart from their context and the occasion of their utterance, might favor one of the grounds claimed. Thus, in *People v. Judges of the Branch Circuit Court, 1 Doug., Mich. R., 319*, it was said there must be "no other remedy." In that case there was a better remedy in the ordinary course of law which reached all that could be desired. But in *People v. Judge of the Wayne Circuit, 19 Mich. R., 296*, the doctrine was laid down more guardedly, that a relator must show "a clear legal right, and that there is no other *adequate* remedy." And in *People v. State Insurance Company, 19 Mich. R., 392*, it was expressed more fully that the writ might issue for a specific duty where there is no other "specific and adequate remedy."

Blackstone very clearly defines the jurisdiction in a few words. He says it lies "where the party hath a right to have any thing done, and hath no other specific means of compelling its performance."—*3 Bl. Com., 110*. In *Rex v. Windham, Cowp., 377*, Lord Mansfield adopts a statement of Mr. Kenyon, "that where there is no other *legal specific remedy* to attain the ends of justice, the course must be by *mandamus*, which is a prerogative writ." In *Rex v. Barker, 3 Burr., 1265*, he says: "Therefore it ought to be used

upon all occasions where the law has established no specific remedy, and where, in justice and good government, there ought to be one. Within the last century it has been liberally interposed for the benefit of the subject, and the advancement of justice. The value of the matter, or the degree of its importance to the public police, is not scrupulously weighed. If there be *a right*, and *no other* specific remedy, this should not be denied." And in *Rex v. Vice Chancellor of Cambridge, 3 Burr., 1647*, he says again: "This is the very reason of the courts issuing the prerogative writ of a *mandamus*; because there is no other specific remedy." The other judges were equally emphatic.

For most rights the ordinary legal remedies are ample to prevent a failure of justice, as upon private contracts a judgment for damages will usually suffice. But there are cases where, if contracts cannot be enforced specially, there will be a failure of justice; and as the law can give no specific remedy in such cases, parties are compelled to resort to equity. If the law had the requisite machinery, no doubt it would so interfere as to render a resort to equity needless. And in all cases where it can enforce rights specifically, and no other relief is adequate, it certainly would be unjust not to do so. Unfortunately its powers are limited. But in cases where the right is clear and specific, and public officers or tribunals refuse to comply with their duty, a writ of *mandamus* issues for the very purpose, as declared by Lord Mansfield, of enforcing specific relief. It is the inadequacy, and not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of this writ. Where none but specific relief will do justice, specific relief should be granted if practicable. And where a right is single and specific it usually is practicable.

The question then arises whether there is any other adequate, specific, legal remedy.

Courts of law do not, in deciding such questions, take into account remedies in equity. They may be regarded in determining the exercise of discretion in allowing the writ, but they cannot affect the jurisdiction. There is no case where a court of law has its jurisdiction cut off by the existence of equitable remedies. The rule is the reverse,— that equity will not interfere if legal remedies are adequate. There is the strongest possible reason why a party should not be turned over to the tedious and dilatory process of a long suit, when there are no issues that need it. The only question that could arise in the class of cases now before us is, whether the bonds are in the possession of the respondent. If they are, the right to have them restored is a legal conclusion not open to question.

The same reasons would apply to render it improper to turn a party over to a suit in replevin, if there were not still more serious objections to it, as well as doubts of its applicability. The remedy would not only involve a needless legal contention, but it is not a proper or lawful thing to allow a sheriff, on such a writ, to intermeddle with public papers. The policy of the law requires them to be guarded by their official custodian, and it would be a monstrous abuse if the state offices could be exposed to the visitation of ministerial officers who might be commanded by a writ, issued without the previous order or supervision of a court, to seize upon and deliver over to any one who should sue out the process, any document or muriment to be found there. Such a claim would be preposterous. A *mandamus* is the only admissible writ to command public officers to produce and give up papers in their custody.

The writ must be granted as prayed. And we trust it will not be necessary hereafter to interpose for the same purpose.

CHRISTIANCY, CH. J. and COOLEY, J., concurred.

GRAVES, J., did not sit in this case.