THE CITY OF DETROIT v. GEORGE S. HOSMER, CIRCUIT
JUDGE OF WAYNE COUNTY.

*Municipal corporations—Contracts for public improvements—
Injunction—Mandamus.*

1. The circuit court has no jurisdiction to restrain the exercise of
corporate powers by a city, unless the action complained of is
beyond its legal discretion.

So *held,* where the city of Detroit was restrained from making
a contract for lighting its streets, after advertising for bids, and
it is held, on the hearing of an order to show cause why *man-
damus* should not issue to dissolve the injunction, that the only
question is whether the lettings of bidding were absolutely void.

2. A charter provision which requires that certain public work
shall be let to the lowest responsible bidder, after advertising
for bids, without further specifications, requires such informa-
tion to be put within reach of bidders as will enable them to
bid intelligently, and enable the city to know whose bid is
lowest.

3. A city advertised for bids for lighting its streets. The first three
specifications were practically proposals to light the city in the
manner *then* in use, which was the system used by the Brush
Electric Light Company, and the fourth and fifth specifications
called for bids to furnish light *on any other plan,* subject to the
condition of furnishing lights of 2,000 candle power, which later
specifications are held sufficiently definite, the chief concern of
the city being to get *that* light as cheaply as possible, and that
the council must have discretion in determining the merits and
reliability of the various means of reaching that result; that
adopting *specific* methods would shut out others which might
be equally meritorious, and would deprive the city of any new
and improved processes; and that it has been settled that no such
limited range is required. *Attorney General v. Detroit,* 26
Mich. 263.

4. A city (as a corporation) is a single legal person, and in proper
cases subject to legal coercion; and, where so liable, it *is* not
irregular to restrain any city functionary who is engaged in
carrying out the illegal purpose.

5. Whether *mandamus* is the proper remedy to remove an injunc-
tion which ought not to stand depends entirely on the con-

ditions of its issue. Usually, if the mischief can be as well settled by appeal, that is the proper resort.

6. Where a preliminary injunction operates in such a way as to do violence to vested rights and interests, and to prevent the proper authorities from exercising their legal functions, it is such an invasion of right as entitles the aggrieved parties to a prompt redress, which is better for the public peace and order than encouraging an open disregard of the legal tribunals, where it can be avoided.

7. While the action of an inferior court, within its discretion, is to be reached by other appellate process, yet, when the action complained of is beyond any proper discretionary power, or is an abuse of discretion which cannot be justified on legal principles, this Court may and will interfere by *mandamus*, if there is urgency, or pressing occasion to do so. *Railway Co. v. Circuit Judge*, 31 Mich. 456; *Railway Co. v. Circuit Judge*, 44 Id. 479; *Van Norman v. Circuit Judge*, 45 Id. 204; *Maclean v. Circuit Judge*, 52 Id. 257; *Iron-works v. Speed*, 59 Id. 272.

8. It is one of the necessary and fundamental rules of law that the judicial power cannot interfere with the legitimate discretion of any other department of government. So long as they do no illegal act, and are doing business in the range of the powers committed to their exercise, no outside authority can intermeddle with them.

*Mandamus.* Submitted January 28, 1890. Granted January 31, 1890.

Relator applied for *mandamus* to compel the dissolution of an injunction, etc. The facts are stated in the opinion.

*J. W. McGrath, E. F. Conely,* and *F. A. Baker,* for relator.

*Isaac Marston,* for respondent.

CAMPBELL, J. Respondent allowed, and refused to dissolve, an injunction to restrain the city of Detroit, and its several agencies, from making a contract for city lighting under an accepted bid of the Detroit Electric Light & Power Company. The bill under which the

injunction was allowed was filed by the Brush Electric
Light Company, and several private citizens, claiming to
be tax-payers of Detroit, and made the chief ground of
interference, and the only one seriously urged in this
Court, to be a failure of the city to advertise for light-
ing, with such specifications as were necessary to enable
bidders generally to compete.

Respondent's counsel now object to our intervention on
several grounds, which are:

1. That *mandamus* is not the proper remedy.

2. That the court below was acting within its proper
powers.

3. That the case made was such as to authorize the
injunction on the merits.

On the other hand, in addition to the claim that the
court exceeded its proper functions, objection was also
made that the bill was not filed by parties showing any
right to file it, and that the court could not enjoin the
legislative department of the city.

If the court had a case before it which would justify
restraining any city action, we do not think that any
city authority is exempt, if the city itself, as a corpora-
tion, is acting unlawfully. The corporation is a single
legal person, and is in proper cases subject to legal coer-
cion; and, where so liable, it is not irregular to restrain
any city functionary who is engaged in carrying out the
illegal purpose.

We do not find it necessary to consider the question
of proper parties complainant, as the whole facts are
before us, and the controversy ought to be settled.

Whether *mandamus* is the proper remedy to remove an
injunction which ought not to stand depends entirely on
the conditions of its issue. Usually, if the mischief can
be as well settled by appeal, that is the proper resort.
But we have held on several occasions that where a pre-

liminary injunction operates in such a way as to do violence to vested rights and interests, and to prevent the proper authorities from exercising their legal functions, it is such an invasion of right as entitles the aggrieved parties to a prompt redress, which, as decided in those cases, is better for the public peace and order than encouraging an open disregard of the legal tribunals, where it can be avoided. While the action of an inferior court, within its discretion, is to be reached by other appellate process, yet, when the action complained of is beyond any proper discretionary power, or is an abuse of discretion which cannot be justified on legal principles, this Court may and will interfere by *mandamus*, if there is urgency, or pressing occasion to do so. In *Port Huron, etc., Ry. Co. v. Circuit Judge*, 31 Mich. 456, it was held that an attempt by *ex parte* action to divest a board of directors of a corporation of their control over its affairs was such an act as authorized summary interposition. A similar remedy was given in *Tawas, etc., Ry. Co. v. Circuit Judge*, 44 Mich. 479, where a railroad company was restrained from doing business except under conditions not imposed by law, but claimed under contract. The same doctrine is illustrated in *Maclean v. Circuit Judge*, 52 Mich. 257 (18 N. W. Rep. 396); *Barnum, etc., Iron-works v. Speed*, 59 Id. 272 (26 N. W. Rep. 802); *Van Norman v. Circuit Judge*, 45 Id. 204 (7 N. W. Rep. 796).

It is one of the necessary and fundamental rules of law that the judicial power cannot interfere with the legitimate discretion of any other department of government. So long as they do no illegal act, and are doing business in the range of the powers committed to their exercise, no outside authority can intermeddle with them; and, unless the action complained of in the court below was beyond the legal discretion of the city, the circuit court had no

jurisdiction to grant the injunction which was allowed. It appears, further, that the action of the city was in providing for one of its most important duties, of lighting the streets and other places requiring it, and that, unless the contracts are let soon, the work must be either left undone for some time, or done by special arrangements which would put the public at a disadvantage. The only question, therefore, is whether the lettings of bidding were absolutely void and illegal.

Under the charter of Detroit, it is required that all public work of the kind in question shall be let to the lowest responsible bidder, after advertising for bids.   Nothing further is said about specifications; but this provision requires such information to be put within reach of bidders as will enable them to bid intelligently, and will enable the city to know whose bid is lowest.

Counsel did not, in either brief or argument, point out very clearly what fault is found with the specifications published.   The bill is no more definite.   But it is suggested that the fourth and fifth specifications are not clear.   The first three are practically proposals to light the city in the manner now provided, which is the system used by the Brush Light Company.   It may he gathered from the bill that this alone would place that company at an advantage over any other bidders, and would hardly tend to promote competition.   It was not incumbent on the city to confine itself to that system;   and it was not only legal, but entirely proper, to get competition from others, if practicable.   But selecting any other monopolized system would not necessarily open the door very wide.   The end to be reached was obtaining light which could be measured by some comparison of brilliancy with other lights.   'That was the only result needed.   When the candle power is known, the cheapness is matter of simple calculation between bidders.   The

fourth and fifth specifications call for bids to furnish light on any other plan, subject to the condition of furnishing lights of 2,000 candle-power.

It seems to us that this is sufficiently definite. The chief concern of the city is to get that light as cheaply as possible, and the council must have discretion in determining the merits and reliability of the various means of reaching that result. Adopting specific methods would shut out others which may be equally meritorious, and would deprive the city of any new and improved processes. It has been settled that no such limited range is required. In *Attorney General v. Detroit*, 26 Mich. 263, it was held that bids might be advertised for paving with either wood or stone, without choosing either in advance. The numerous and varying bids held legal in that case would justify much more uncertain specifications than those before us. As already suggested, the end desired was a single one, and one which could be reached by various means. The cheapest and best way to reach that end must be to open the door to competition between the means. We do not think the purposes described are ambiguous, and we think it was within the clear discretion of the council to select the course which was selected. It follows that the injunction was an invasion of the discretionary power vested in the city in managing its own affairs, and was beyond the power of the circuit court.

The *mandamus* should be granted as prayed, with costs against the complainants below.

The other Justices concurred.