## CITY OF HURON v. CAMPBELL, Circuit Judge.

1.  The clause in article 5, section 2, of the constitution of this state, providing that the supreme court "shall have a general superintending control over all inferior courts, under such rules and regulations as shall be prescribed by law," materially enlarges the ordinary appellate jurisdiction conferred upon reviewing courts.

2. This added power authorizes this court, by writ of *mandamus*, to control and correct the proceedings of an inferior court in a case where the action complained of exceeds the jurisdictional powers of such court, or there has been a manifest abuse of discretion, and where the case is urgent, and an appeal will not afford an adequate remedy, and the circumstances of the case are such as to require an immediate review of the proceedings.

3. The power of this court to issue the writ of *mandamus* to correct the proceedings of an inferior court in a proper case necessarily includes the power to review the proceedings of such court, and to determine whether or not the case is a proper one for the exercise of the authority vested in this court.

4. It is one of the fundamental rules of law that the judicial power cannot interfere with the legitimate discretion of any other department of the government so long as it does no illegal act, and conducts its business within the limits of the powers conferred upon it and committed to its exercise, and when in the exercise of its powers it is not chargeable with an abuse of discretion.

5. A city council is a part of the legislative power of the state within a limited district, and, within the sphere of the powers delegated to it, it has absolute control in matters so delegated to it, in the absence of fraud or a manifest abuse of such power.

6. When such city council proceeds, or attempts to proceed, in a manner not authorized by its charter, or abuses its discretion or exceeds its powers, a court of competent jurisdiction, in a proper case, is authorized to arrest these proceedings by injunction, or by any other appropriate remedy.

7. In the city charter of the city of Huron it is provided that the city attorney of said city "shall receive such compensation as the city council by ordinance or the order of appointment shall allow." It was not a valid or proper discharge of its duty for said city council to authorize the city attorney "to appoint as many assistant attorneys as the mayor may deem necessary," and to fix a general and undivided compensation for said city attorney and assistants for conducting certain litigation for said city by a percentage upon the amount involved in such particular suits.

8. The city council of said city is only authorized by ordinance or by the order of appointment to fix the compensation of the city attorney for the duties imposed upon him by the city charter, to continue for his term. In fixing such compensation, the city council can take into consideration all the duties such city attorney is required, by the charter, to perform, and the amount and character of the litigation to which the city is or may be a party.

9. A city council has the implied power to employ an attorney or attorneys, when in its judgment the interests of the city require such assistant or

assistants, to aid the city attorney in the conduct and management of the litigation to which the city is a party, or. in which it has an interest.

(Syllabus by the Court.  Opinion filed Oct. 10, 1892.)

Application by the city of Huron for a writ of *mandamus* to compel A. W. Campbell, as circuit judge of the fifth judicial circuit, to vacate and set aside a certain injunction.  Writ denied.

The facts are fully stated in the opinion.  No briefs filed.

*A. W. Wilmarth*, *H. Ray Myers* and *F. Volrath*, for plaintiff.

CORSON, J.   This is an application to this court for a peremptory writ of *mandamus* to the circuit judge of the fifth judicial circuit, commanding him, as a court, to vacate and set aside a certain injunction granted by the said court, enjoining said city of Huron from allowing, and the city treasurer of said city and the county treasurer of Beadle county from paying, A. W. Wilmarth, city attorney, a certain warrant for $2,370, and from issuing any warrants or making any disbursements founded upon a resolution of the city council, adopted April 22, 1892.  It appears from the affidavit made in support of the application that the city of Huron, the relator, was organized as a municipal corporation by a special charter, containing the powers usually granted to municipal corporations.  That one of the powers conferred upon the city council was that of appointing a city attorney, who is to receive such compensation as the city council may by ordinance or by order of appointment allow.  That on April 22, 1892, A. W. Wilmarth, Esq., was appointed such city attorney by the said city council of said city, and that his compensation was provided for by an order, as follows:  "Therefore, be it resolved, that the city attorney, A. W. Wilmarth, is hereby authorized and directed to appoint as many assistant attorneys as the mayor of the city may deem necessary to protect and defend, in the various courts, the just and lawful rights of the city involved in the suits, and all other suits, which may be brought against the city relating to said bond and warrant suit and water rental and water contract cases; and the mayor, H. Ray Myers, shall have full control and mangement of all the suits above mentioned, and the said city attorney, A. W.

Wilmarth, shall receive as compensation for his services as said attorney, and for the services for all the assistant attorneys appointed as above set forth, two per cent. of the amount involved in said suits, as computed by the finance committee; and the mayor is hereby authorized and directed to draw warrants on the city treasurer in favor of the city attorney for his pay, and to pay his assistants, as hereby allowed by the city council and computed by the finance committee, as stated in the order of his appointment, at such time and in such amounts as he may deem necessary to the interest of the city, and in justice to the attorneys employed; and the compensation of the two per cent. shall be payment in full for all services rendered by all the attorneys engaged in said suit from the commencement thereof to the determination of the same." That on June 4, 1892, the said city council allowed said city attorney, as part compensation for himself and assistants, the sum of $2,370, and directed a warrant to be drawn therefor upon the general fund of the said city. That before the delivery of the said city warrant, so ordered, Charles Reed and others, claiming to be taxpayers of said city, instituted a suit against said city, its mayor, city clerk, city attorney, city treasurer, and the county treasurer, in the circuit court of the fifth judicial circuit in and for Beadle county, to restrain the city from allowing, and the city and county treasurers from paying, said sum, or any other sum, to the said city attorney founded upon such order of April 22d. That said injunction is now in force and that the delay incident to an appeal renders an appeal to this court an inadequate remedy, as said city will be liable to numerous judgments against it that cannot be prevented for want of proper legal assistance to aid the city attorney in protecting the rights of the city while said appeal is pending.

The principal grounds relied on by the relator for the issuing of said writ are (1) that the complaint upon which the injunction was issued does not state facts sufficient to constitute a cause of action, and that the allegations in the complaint are stated mainly upon information and belief, and are insufficient to authorize the said court to grant the said injunction; (2) that the acts of the said city council in providing for the compensation of the

city attorney of said city and assistants, and in auditing and allowing the said city attorney and his assistants the sum of $2,370, were within the powers conferred upon the said city council, and that the circuit court had no jurisdiction to enjoin the payment of the same, and that in granting said injunction said circuit court exceeded the discretionary power vested in said court; (3) that an appeal in this case would not afford an adequate remedy, as the delay incident to such an appeal would cause great and irreparable injury to relator.   Neither the circuit judge nor either of the plaintiffs in the injunction suit appeared on the application for the writ, though due service of the notice, with a copy of the affidavit, was made upon said circuit judge.   But Mr. Pyle, a member of the Beadle County bar and of this court, as *amicus curiae* suggested to the court that it could not proceed to issue the peremptory writ until the parties interested (which he contended were the plaintiffs in the injunction suit) had proper notice; and that an appellate court would not review a decision made by an inferior court, by *mandamus* proceedings, when the party had a remedy by appeal, but would leave such party to pursue his appeal in the usual manner; the writ not taking the place of an appeal or writ of error.   In support of his views the learned counsel cited a number of authorities.   As these two suggestions are important, and go to the power of this court to issue the writ, they will be first considered, and the right and power of this court to review the proceedings of the circuit court and to issue the peremptory writ determined, before we proceed to discuss the merits of the application.

1. The notice of this application, as before stated, was served upon the circuit judge only, and not upon any of the parties plaintiff in the injunction suit.   Is it necessary that such plaintiffs shall be served with notice or an alternative *mandamus* before this court can properly issue a peremptory writ?   We think not. Neither the statute nor the common law requires that such notice should be given.   Section 5517, Comp. Laws, provides that the writ of *mandamus* may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person, to compel the performance, etc.   Section 5519 provides that the writ

may be either alternative or peremptory. The alternative writ must state generally the allegations against the party to whom it is directed, and command such party  *  *  *  to do the act required to be performed, or show cause, etc. And section 5520 provides that, if application be upon due notice,  *  *  *  the peremptory writ may be issued in the first instance. It would seem, therefore, that under our statute, the alternative writ, when issued, only runs to the party who is required to perform the act, and notice is a substitute for such alternative writ. Mr. High, in his work on Extraordinary Legal Remedies, (section 446,) says: "When the aid of *mandamus* is invoked against an inferior court it would seem to be sufficient, ordinarily, to address the writ either to the court, as such, or to the individual judge composing it." St. Louis County Ct. v. Sparks, 10 Mo. 118; Fry v. Reynolds, 33 Ark. 450. Again, in section 440, Mr. High says: "As regards the joinder of parties respondent in writs of *mandamus*, the first general principle to be observed is that the writ should run to the person whose duty it is to perform the act required;  *  *  *  nor is it the practice to make any other parties respondent than the officer whose conduct is complained of."

2. The second suggestion of Mr. Pyle, as *amicus curiae*, is not entirely free from difficulty. No doubt the general rule is, as stated by him, that an appellate court will not by *mandamus* proceedings review the decision of an inferior court, nor require such court to reverse its decision and enter a different one, and it may be that a court possessing strictly appellate powers only ought never to do this, and so the courts of many of the states have so stated the rule without qualification; but the supreme courts of Michigan, Louisiana, and Alabama have not been governed by this rule, because they have held their powers and jurisdiction, under their respective constitutions, to be more than simply appellate. The constitutions of those states, like our own, confer upon the supreme court, besides appellate jurisdiction, a general superintending control over all inferior courts. Article 5, § 2, Const. S. D. This provision materially enlarges the powers of otherwise only appellate courts, and enables them, by means of their various writs, prerogative and remedial, to control and cor-

rect the decisions of inferior courts in special cases, and prevent injustice and irreparable injury. When the circumstances demand an immediate review, the case is urgent, and an appeal will not afford an adequate remedy. The change wrought by the additional constitutional provision above mentioned is well stated by the supreme court of Louisiana in State v. Judge, 36 La. Ann. 578. An application was made to that court for a *mandamus* to compel a district judge to grant an injunction, which he had denied. The court says: "In the case of State v. Judge, 31 La. Ann. 794, in which a *mandamus* was asked to compel a judge to issue an injunction, * * * it was said that articles 820 and 821, Code Prac., are sufficiently broad, and would authorize the writ, if the court had not been restrained by the constitutional provision which declares that its jurisdiction is appellate only; thus intimating, but for that restriction, and had it a more enlarged jurisdiction, it could grant the relief asked on a proper showing. Since that opinion was rendered, the condition of things has changed. The constitution of 1879 has conferred on this court not only an appellate, but also an unqualified supervising, jurisdiction over all inferior tribunals, thus enabling it to act when preceding courts of last resort had proved powerless so to do. * * * Under the interpretations of that provision, (article 90,) it was held this court is emancipated from the restraint, and that it may issue said writs in all cases covered by the provisions of the Code of Practice, both in appealable and unappealable cases, under a proper showing." A similar view of the effect of this provision in a constitution giving to the supreme court a general superintending control over all inferior courts, is held by the supreme court of Michigan. In Railroad Co. v. Circuit Judge, 44 Mich. 479, 7 N. W. Rep. 65, an application was made to the supreme court for a peremptory *mandamus* to compel the judge to set aside and vacate an order granting an injunction. The court in that case (CAMPBELL, J.) says: "The question thus arises whether *mandamus* is the proper remedy. We have already practically settled this in Railway Co. v. Judge of St. Clair Circuit, 31 Mich. 456, where the point was presented and decided. The jurisdiction of this court in *mandamus* cases is not statutory, but plenary, and super-

vision is given over all inferior tribunals by the constitution. Article 6, § 3. * * * In granting this remedy, courts are always disposed to confine it to cases where there is no other adequate specific remedy. But the existence of a remedy of another nature, which is not adequate, furnishes no reason for refusing it if the necessity requires it." The question was again before the supreme court of Michigan in the recent case of City of Detroit v. Judge, 79 Mich. 384, 44 N. W. Rep. 622, in which the rule is stated and carefully limited. The court in that case says: "Whether *mandamus* is the proper remedy to remove an injunction which ought not to stand depends entirely on the conditions of its issue. Usually, if the mischief can be as well settled by appeal, that is the proper resort. But we have held on several occasions. that where a preliminary injunction operates in such a way as to do violence to vested rights and interests, and to prevent the proper authorities from exercising their legal functions, it is such an invasion of right as entitles the aggrieved parties to a prompt redress, which, as decided in those cases, is better for the public peace and order than encouraging an open disregard of the legal tribunals, where it can be avoided. While the action of an inferior court, within its discretion, is to be reached by other appellate process, yet, when the action complained of is beyond any proper discretionary power, or is an abuse of discretion which cannot be justified on legal principles, this court may and will interfere by *mandamus*, if there is urgency or pressing occasion to do so. In Railway Co. v. Judge of St. Clair Circuit, 31 Mich. 456, it was held that an attempt by *ex parte* action to divest a board of directors of a corporation of their control over its affairs was such an act as authorized summary interposition." The rule as there laid down and limited seems to be the true and safe rule.

With the powers thus conferred upon this court by the constitution and laws of this state, we are of the opinion that this court has ample authority, to be exercised within its judicial discretion, to issue the writ to review the proceedings of subordinate courts in cases where the action complained of is beyond the discretionary powers of such courts, or when there is an abuse of such discretion, and the remedy by appeal is inadequate and the case is

urgent, and the circumstances require prompt action on the part of this court, to prevent injustice and injury resulting. Railroad Co. v. Circuit Judge, 44 Mich. 479, 7 N. W. Rep. 65; Maclean v. Circuit Judge, 52 Mich. 257, 18 N. W. Rep. 396; La Grange v. Treasurer, 24 Mich. 468; Iron Works v. Speed, 59 Mich. 272, 26 N. W. Rep. 802, 805; Van Norman v. Circuit Judge, 45 Mich. 204, 7 N. W. Rep. 796; *Ex parte* Walker, 54 Ala. 577; *Ex parte* Stow, 51 Ala. 69; *Ex parte* Bradley, 7 Wall. 364; Wood v. Strother, 76 Cal. 545, 18 Pac. Rep. 766; *Ex parte* Pike, 9 Ark. 336. The power being vested in this court to issue the writ in a proper case, this court necessarily has jurisdiction to review the proceedings of the circuit court, in order to determine whether or not the case is a proper one for the exercise of the authority so vested in this court. We are of the opinion that the facts disclosed in the affidavit and proceedings in the injunction suit show that an appeal is not an adequate remedy, and that the case is urgent, and requires prompt action on the part of this court, that the relator, the city of Huron, may be enabled to protect the interests of the city in the large amount of litigation now pending in which said city is a party.

We are therefore brought to a consideration of the main question involved in this application, namely, did the circuit court exceed its discretionary powers in granting the injunction orders in this case? It is one of the necessary and fundamental rules of law that the judicial power cannot interfere with the legitimate discretion of any other department of the government. So long as such department does no illegal act, and conducts its business within the limits of the powers conferred upon it and committed to its exercise, no court can interfere with its action,—City of Detroit v. Circuit Judge, 79 Mich. 384, 44 N. W. Rep. 622; and a city council is a part of the legislative power of the state within a limited district, and, within the sphere of the powers delegated to it, a municipal corporation has as absolute control in matters delegated to it, and within its powers, as the legislature would have if it had never delegated such powers and exercised them by its own laws,—City of St. Louis v. Boffinger, 19 Mo. 15; Taylor v. City of Carondelet, 22 Mo. 105; Schanck v. Meyer, 69 N. Y. 444;

Des Moines G. Co. v. Des Moines, 44 Iowa, 505; Heland v. Lowell, 3 Allen, 408; City of Logansport v. Dykeman, (Ind. Sup.) 17 N. E. Rep. 587; 15 Amer. & Eng. Enc. Law, p. 1046; 1 Dill. Mun. Corp. § 89. If, therefore, the city council of the city of Huron was acting within the limits of the powers conferred upon it by its charter in providing compensation for its city attorney, and in auditing and allowing him, for himself and his assistants, the sum of $2,370, and in directing payment of the same, and there was no fraud or abuse of discretion, and it did not exceed the limit of the city indebtedness, the circuit court was not authorized to interfere with the proceedings of the said council by injunction or otherwise. But if, on the other hand, the city council was proceeding, or attempting to proceed, in a manner not authorized by the city charter, it was within the powers of the circuit court in a proper case to arrest the unauthorized proceedings of such council by injunction. It is claimed by the plaintiffs in the injunction suit that the acts of the city council in adopting the resolution of April 22d were unauthorized by the charter, illegal and void, and that the auditing and allowing the city attorney and his assistants the sum of $2,370 was unlawful and without authority. What, then, were the powers conferred upon the city council by its charter? The charter provides for a city council to be composed of eight members, elected by the electors of their respective wards, in whom, with the mayor and other city officers, is vested the municipal government of the city. Among the officers named is a city attorney, who shall be appointed by the city council, and who shall receive such compensation as the city council may by ordinance or by order of appointment allow; the language of the charter being: "The marshal, city attorney, and street commissioner shall each receive such compensation as the city council may by ordinance or by the order of appointment allow." Section 11, City Charter. The duties of the city attorney are prescribed by section 30 of the charter, and are as follows: "It shall be the duty of the city attorney to appear for the city before the police justice and in all other courts, to take charge of the legal business of the city, prepare ordinances for the city council, give his written opinion whenever called upon by said council, and give

legal advice to any of the officers of the city respecting their official business, and to perform such other duties as may be required by the city council." The city council is also empowered "to audit and allow all just claims against the city, and direct the payment of such as are allowed," and "to appropriate money and provide for the payment of the expenses and indebtedness of the corporation." Sections 28 and 29, City Charter. The power is also conferred upon the corporation to sue and be sued, to make all contracts necessary to the exercise of its corporate powers, and to purchase, hold, and dispose of property, real and personal, for the use of the city. Section 1, City Charter. These are all the provisions of the charter that need be noticed as bearing upon the question before us.

It will be observed that, by section 11, the city council was authorized to fix the compensation of the city attorney in the order of his appointment or by ordinance, and that upon such city attorney is imposed the duty "to appear for the city before the police justice and in all other courts, to take charge of the legal business of the city, prepare ordinances for the city council, give his written opinion whenever called upon by said city council," give legal advice to the city officers, etc., and perform such other duties as may be required by the city council. The city council is authorized to fix the compensation of the city attorney, but it must be done by ordinance or in the order fixing his appointment. This would indicate that his compensation was to be fixed at some definite sum or rate, or upon some plan or schedule, which could find expression in an ordinance. It was to be his compensation for acting as city attorney, which would comprehend the discharge of all of such duties as the city charter imposed upon the city attorney. It was to be for his personal services in that behalf. He is to have charge in all courts of the legal business of the city, and for this and the other duties imposed upon him his compensation was to be fixed by the council, either by ordinance or in the order of his appointment. The resolution of the city council attempts to nullify the charter by placing the legal business of the city in charge of the mayor, and then authorizes the city attorney to appoint as many assistants as such

mayor may think necessary, and the resolution fixes the amount which the city shall pay, not as compensation for the services of the city attorney, but for the services of the city attorney and as many attorneys as the mayor shall deem advisable to be appointed. How can it be determined what is the compensation of the city attorney? It fixes the compensation, not for his services as city attorney during his term, or to stop at its expiration, but it is more in the nature of a contract for the management of particular cases, as an attorney for the city in those cases, and not as compensation for the services imposed upon him as a city officer by the charter. Such a resolution cannot be regarded as a discharge of the duty of the council to fix his compensation. The 2 per cent. allowed as such compensation was not for his services alone, but for his services in the cases specified, and the assistants he might employ under the direction of the mayor. When is the amount of the 2 per cent. on the amount involved in the litigation to be paid? Is that amount fixed as compensation of the city attorney and his assistants during his term, or is it for the management of the suits until they are finally disposed of? The resolution, in so far as it attempted to confer upon the mayor the management and control of the litigation of the city, was clearly illegal. The council had no more power to confer upon the mayor duties imposed upon the city attorney than it had power to confer upon the city attorney the duties imposed upon the mayor. The city council was therefore attempting to exercise powers not conferred upon it by the charter.

We are of the opinion that in adopting this resolution the city council cannot be considered as exercising the powers to fix the compensation of the city attorney vested in it by the city charter, and its act in adopting that resolution was not in pursuance of the powers vested in it, and is therefore, in so far as it attempts to fix the compensation of the city attorney, illegal and void. The circuit court, therefore, exercised a proper legal discretion in enjoining all payment under and by virtue of said resolution. The power to fix the compensation of the city attorney not having been exercised by the city council, its power to fix it still remains, and may be executed by ordinance at any time during the term of the

city attorney.   Undoubtedly the city council has an implied authority to employ an attorney or attorneys, when in their judgment the interests of the city require it, to assist the city attorney in the conduct of its legal business; but the employment of such an assistant or assistants must be made by contracts made directly with him or them.   Smith v. Sacramento City, 13 Cal. 531; Hornblower v. Duden, 35 Cal. 670; Hoxsey v. Patterson, 40 N. J. Law, 186; Clarke v. Lyon Co. 8 Nev. 188; Waterbury v. Laredo, (Tex. Sup.) 5 S. W. Rep. 81; Pullman v. New York, 54 Barb. 170; Sharp v. Mayor, 9 Abb. Pr. 243.

The citizens of the municipality have a right to know the compensation their city attorney is receiving, and also what compensation is to be paid to an assistant or assistants.   The auditing and allowing to the city attorney and his associates of the sum of $2,370 by the city council was also illegal and unauthorized.   As the city council had failed to legally fix the compensation of the city attorney, it could not legally audit and allow him any amount until his compensation was so fixed in the manner provided by the charter.   But, in addition to this objection, the amount audited and allowed was not to the city attorney for services as city attorney, but to him and assistants for the management of one particular case in which the city was a party.   The power is given the city council to audit and allow all just claims against the city, and direct the payment of such as are allowed, and to appropriate money and provide for the payment of the expenses and indebtedness of the city; but the power can only be exercised in auditing and allowing such claims as are authorized to be allowed by the city council by the charter.   We find no warrant in the city charter for auditing the claim of the city attorney and his assistants for the amount specified.   It is not competent, we think, for the city council to make contracts of the character mentioned in this resolution, appropriating $2,370, with its city attorney.   As before seen, the charter prescribes the duties imposed upon the city attorney, and among them is the duty of taking charge of the legal business of the city.   It is for the performance of these duties that the council may fix a compensation. In fixing this compensation the city council can, no doubt, take

into consideration the amount and character of the legal business the city attorney will be required to perform in the management of the city's litigation; but it must in some manner be definitely fixed, to continue only during his term, and fixed for himself alone, and not for assistants also. In fixing this compensation, the city council must exercise its judgment upon that particular question; and, in determining the necessity for an assistant or assistants, the city council must equally exercise its judgment as to the necessity for an assistant or assistants, and the compensation to be allowed him or them. The circuit court, therefore, in our opinion, properly exercised its judicial discretion in enjoining the payment of the amount specified.

Our conclusion is, therefore, that the writ must be denied, and it is so ordered. All the judges concur.