W. T. SODEN v. THE CITY OF EMPORIA *et al.*

No. 255.

CITIES OF SECOND CLASS— *Power to Provide Drainage and Sewerage System — Injunction.* The law gives to each city of the second class ample powers to provide for its citizens a system of drainage and sewerage; and where the plaintiff sought to perpetually enjoin the mayor and council of such a city from proceeding under the terms of a contract already let for the construction of a sewerage system for the entire city, in accordance with a comprehensive plan adopted by them; and where the petition set forth no other ground for the allowance of such injunction than that the location of the outlet for the sewerage system, as determined upon by the city officials, was ill judged, and its use would necessarily result, by reason of the foul and noxious stench that would arise, in a continuing nuisance to plaintiff's property, and to himself, his family, and the persons employed in his mill, such outlet being down the stream from and not on plaintiff's premises: *Held*, That a demurrer to such petition, for failure to state a cause of action, was properly sustained.

Error from Lyon district court; CHARLES B. GRAVES, judge. Opinion filed March 14, 1898. Affirmed.

PETITION for injunction to restrain the defendants from constructing and opening a proposed outlet for the sewerage system of the city of Emporia. A demurrer thereto, on the ground that it failed to state a cause of action, having been sustained, the plaintiff brings proceedings in error.

The petition alleged ownership by the plaintiff of about forty-seven acres of land lying mainly on the north side of the Cottonwood river and about sixty rods south of the city, the low-water mark of the river forming the southern boundary of most of the land; that the plaintiff, with his family, dwelt upon said land, in a commodious residence, near which, on the same tract, was a beautiful grove of forest-trees, maintained by the plaintiff as a pleasure-ground for himself and family, and which, by his permission, was also used by the citizens of Emporia and vicinity, and by the students of the state normal school, and others, for picnics, celebrations, and like gatherings; that the grove is easily accessible by street-car line from the city of Emporia, and, by reason of its shady walks, pure air, and pleasant location, adds greatly to the comfort and enjoyment of the citizens; that plaintiff had also on said tract a valuable water-power flouring-mill and buildings, and machinery for sawing, planing and manufacturing lumber, in and about which he and a large number of workmen were continuously engaged during the usual working hours of each day.

That defendants the mayor and council of the city of Emporia, which is a city of the second class, with

a population of about 10,000, had by ordinance constituted the whole city one sewerage district, and had adopted a plan or system of sewerage for the city whereby the entire sewerage of its inhabitants would be conducted into and carried off by one large sewer extending from the corporate limits of the city on the south side thereof and immediately adjacent to plaintiff's land, and on the east side of the same, to the north bank of the Cottonwood river, and there deposited ; that a contract for the construction of the same had been let to the defendant Wilcox, who was about to commence laying pipes and drains for such sewer system.

That the dumping-ground for such sewer upon the north edge of the river-bed as aforesaid is at a point where the water in the river is naturally low, occasioned by a riffle or rapids, and in times of low water in the river, which is usual in the hot months of summer and fall of each year, and particularly when plaintiff's mill is shut down at night, or for repairs, which is sometimes for days at a time, there is not only no current in the river, but no water at the dumping-ground for said sewer, and the sewerage will be dumped out on the sand, gravel and dry bed of the stream, there necessarily to accumulate, fester, and poison the air and breed disease, and render plaintiff's entire premises noxious, unwholesome, and unhealthy ; and such sewer outlet and dumping-ground for the sewerage of the city will necessarily be and become an unmitigated nuisance to plaintiff and his property as soon as the same shall be constructed and used for sewer purposes as aforesaid, and will, unless restrained by injunction, continue to be a great nuisance for all time to come, increasing as the city increases in growth and population.

That the city is situated between the Cottonwood and Neosho rivers, about six miles above the junction of the two streams, upon land sloping toward the Cottonwood, which at that point flows east, and that a ravine extends through the site of the city in a south and southeasterly course, reaching the Cottonwood river at a point from forty to sixty rods east of the proposed sewer' outlet; that the drainage of a large portion of the city follows this natural channel, emptying through it into the last-named river; that the ravine would furnish the proper outlet for the sewerage system of the city, and that by follow-ing the same an outlet into deep water could be obtained, thus avoiding the creation of a nuisance to plaintiff or to any one else; and that plaintiff had called the attention of the defendants the mayor and councilmen to the alleged more desirable outlet for the sewerage system and explained to them its advantages, but without avail. The petition asked for a perpetual injunction restraining the defendants from constructing and opening the adopted outlet for the sewerage system.

*L. B. Kellogg*, and *I. E. Lambert*, for plaintiff in error.

*Buck & Spencer*, for defendants in error.

The opinion of the court was delivered by

MILTON, J.: The plaintiff in error contends that since his petition set forth a good cause of action for the relief sought, the court erred in sustaining a demurrer thereto. Assuming the correctness of this claim, if this were an ordinary injunction action, we come at once to the most important question which arises in this case: Do the allegations of the petition

entitle the plaintiff to an order perpetually enjoining the city officers from constructing a sewerage system according to the plan which they have deliberately adopted? To answer this question involves a consideration of several statutes relating to cities of the second class. The legislature has conferred ample power upon the mayor and council of each city of this class to provide for, construct and maintain a system of sewerage for such city. Besides the authority to divide the city into sewerage districts for purposes of taxation in connection with the construction of sewers, and the power to issue improvement bonds of the city, the officers have authority to connect sewer-pipes and drains with any creek, ravine or river within five miles of the corporate limits of the city, and the right of eminent domain is expressly granted for such purpose.

Whenever such city council shall determine to lay off and condemn a right of way from its corporate limits to some point on a creek, ravine or river and to connect the sewer-pipes and drains therewith, the mayor and council may, by resolution, appoint appraisers to appraise the damage which the laying of such pipes and drains and the connecting of the same with the watercourse shall cause any person; and before such connection with the watercourse is made the city shall deposit with the county treasurer the amount so assessed as damages. It is also provided that any person feeling aggrieved by such award may appeal, as in case of condemnation for railroads. Notice is to be given through the official paper of the city and by personal service thereof upon each known resident owner of land to be taken, and notice for five days prior to such condemnation shall be posted at

the point where it is proposed to connect with the creek, ravine, or river. It is also provided that

"Any person through whose land such pipes or drains may be laid, or who would be otherwise damaged, may give his consent thereto in writing, and such writing, without formal acknowledgment, may be recorded in the office of the register of deeds of the proper county, and thenceforth the city shall have the same right to construct and maintain such pipes and drains as though such lands and rights had been formally condemned."

Another statute provides that, before a city council shall make any contract for building bridges or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council. From the allegations of the petition it will be presumed that the last-named statute had been complied with by the city officers before letting the contract to the defendant Wilcox, and that all other statutory steps had been duly taken; that a comprehensive plan for a sewerage system adequate to the needs of the city of Emporia had been adopted after due consideration by such officers, in accordance with their judgment; and that such plan necessarily embraced the selection by them of an outlet which they deemed suitable and proper for the proposed sewerage system. It is alleged that the selection of the outlet thus chosen was altogether ill judged, and that a nuisance would inevitably result from the use of such outlet. It is also alleged that the plaintiff had, without result, pointed out to the mayor and council a more suitable place for a sewer outlet. We find that the question here presented received the attention of our supreme court in the case of *Gould v. City of Topeka*, 32 Kan. 485. That was an action to recover damages for personal injuries alleged to have

resulted from the unsafe and dangerous condition of a public street in the city of Topeka. We quote portions of the opinion :

"But it is claimed by counsel for the defendant that municipal corporations are endowed with various powers, among which are, first, those which are discretionary and judicial, *quasi*-judicial or legislative in their character, and, second, those which are mandatory and ministerial in their character; and that while municipal corporations may be held liable for the wrongful exercise or the wrongful failure to exercise those powers which are mandatory and ministerial in their character, such as negligently failing to keep their streets in safe and proper condition, yet that no liability can be incurred by the exercise or failure to exercise those other powers belonging to the first class above mentioned, as where the city orders or plans a street improvement, or a change or alteration of such street, and the work is done accordingly, even if the exercise of such power or failure to exercise the same should be ever so wrongful.

"We agree with counsel in their division of the powers of municipal corporations, and generally that cities are not liable for the exercise or non-exercise of the first class of powers mentioned.

"Nor is the principal part of the reasoning in one of this class of cases like the principal part of the reasoning in the other; for in the one class of cases the city has a legal right to do just what it has done, while in the other it has no such right; and a cause of action can seldom, if ever, be based upon the lawful exercise of an unquestioned legal right, while it may generally be based upon a wrong. See the case of the *City of Atchison v. Challiss*, 9 Kan. 603, heretofore cited, for the reasoning where the city is held not to be liable."

One paragraph of the syllabus reads :

"Where it is claimed that the city should be protected for the reason that the condition of the street was so brought about in accordance with a plan previously adopted or subsequently ratified by the city,

or its governing board, in the exercise of a judicial, *quasi*-judicial, legislative or discretionary power, it must be shown that the exact matter was under consideration by the governing board, and that after due deliberation such plan was expressly adopted, or expressly ratified."

From an extensive reading of the authorities, we think the declarations of our supreme court in the case just cited are in accordance with the clear weight of authority. High lays down the rule in this language :

" No principle of equity jurisprudence is better established than that courts of equity will not sit in review of the proceedings of subordinate political or municipal tribunals, and that where matters are left to the discretion of such bodies the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed." (Injunctions, 3d ed., § 1240.)

Referring to the powers of cities in respect to streets, Dillon says :

"That the power to grade and improve streets . . . is a *continuing one*, unless the contrary be indicated, has been frequently decided in both the national and state courts. It may, therefore, be exercised from time to time as the wants of the municipal corporation may require. Of the necessity or expediency of its exercise, the governing body of the corporation, and not the courts, are the judges." (Municipal Corporations, 3d ed., § 686.)

And in section 1046 (3d ed.) he says :

" Since the duty . . . of *providing drainage or sewerage for surface-water* is in its nature *judicial or quasi-judicial*, . . . requiring the exercise of judgment as to the time when and the mode in which it shall be undertaken, the claims of respective localities as to order of commencement when it cannot all be effected at once, and the best plans which the means

at the disposal of the corporation render it practicable to adopt, it follows, upon legal principles, that the corporation is not liable to a civil action for *wholly failing to provide drainage or sewerage,* nor, probably, for any *defect or want of efficiency in the plan* of sewerage or drainage adopted.''

In the next section he states that when the duty of a municipal corporation as respects drains and sewers ceases to be *quasi*-judicial and becomes ministerial the liability of the corporation for the negligent discharge or negligent omission to discharge its duty as to such drains and sewers becomes clear. The American and English Encyclopedia of Law (vol. 6, p. 23) says:

'' With respect to the liability of municipal corporations, a distinction is also made between those duties which are termed ministerial and those which are of a judicial nature. Concerning the latter, no responsibility exists; but for the failure to perform or the improper performance of the former the corporation is always liable.''

In the well-considered case of *Seifert v. City of Brooklyn,* 101 N. Y. 136, the defendant city invoked the principle exempting municipal corporations from liability for damages occasioned through the exercise of judicial functions by its officers as a defense to the action. Certain officers of the city were constituted by the statute commissioners of sewerage and drainage, with powers to devise and frame a plan of drainage and construct such system of sewers and drains as the interests of the citizens of Brooklyn required. The discharge pipes of the system being too small, inundation of plaintiff's premises by overflow at a manhole frequently occurred. We quote extracts from the opinion of the court:

''In *Hines v. City of Lockport,* 50 N. Y. 236, the

plaintiff was injured by defects in a public street. It was held that the duty resting upon the corporation of building, opening and grading streets, sidewalks, sewers, etc., was judicial, but that after they were constructed the duty of keeping them in repair was ministerial, and from an omission to perform that duty liability arose. . . . Municipal corporations have quite invariably been held liable for damages occasioned by acts resulting in the creation of public or private nuisances, or for an unlawful entry upon premises of another, whereby injury to his property had been occasioned."

From Wood on Nuisances, section 752, the court quoted with approval the following:

"As to the *necessity for a sewer, or its location, or the sys'em or plan of sewerage,* the decision of the proper municipal officers is conclusive, because it is an exercise of a discretion reposed in them by law, and consequently is not revisable by the courts; but if, in the selection of a location it unnecessarily creates a nuisance to public or private rights, it is responsible therefor."

In the case of *Wicks v. Town of De Witt,* 54 Iowa, 131, the plaintiff sought to recover damages caused by the construction of a ditch in a street of the town. The court said:

"As the defendant was vested with full power to construct the ditch, its location or the general plan of drainage adopted was within the exclusive control of the municipality, and the defendant cannot be held liable for the improper location of the ditch."

The same court, in *Brewster v. City of Davenport,* 51 Iowa, 430, employed this language:

"It is made the duty of the city council to determine whether an improvement of this character is demanded by the public. With their determination, when fairly made in the exercise of competent authority, we cannot interfere."

In *City of North Vernon . v. Voegler*, 103 Ind. 314 ( 2 N. E. Rep. 823), the supreme court of Indiana, by Elliott, J., said :

"The only rule that has any valid support in principle is that for errors in judgment in devising a plan there is no liability, but there is liability where the lack of care and skill in devising the plan is so great as to constitute negligence.   Our decisions have long and steadily maintained that municipal corporations are not responsible for consequential injuries resulting from the grading of streets where the work is done in a careful and skilful manner ; but they have quite as steadily maintained that where the work is done in a. negligent and unskilful manner  the corporation ·is liable for injuries resulting to adjacent property."

In the case of *Town of Sullivan v. Phillips*, 110 Ind. 321, Phillips and others brought a joint action against the city asking that it be restrained from constructing a drain along the street on which their lots were located.   The court declared :

"It is undoubtedly true that, as a general rule, courts cannot interfere with the power of a municipal corporation to determine for itself the best method of constructing drains and sewers, for this is a discretionary power committed to the municipal authorities ;  but they can prevent the corporation from collecting the water in one body or channel and pouring it upon the property of a citizen.   As long as the corporate authorities keep within the discretion conferred upon them they are the exclusive judges of the plan and method of constructing drains and sewers."

See also *Avery v. Job*, 36 Pac. Rep. (Cal.) 293 ; *Titus v. City of Boston*, 161 Mass. 209, 36 N. E. Rep. 793 ; *City of Detroit v. Hosmer, Circuit Judge*, 79 Mich. 384, 44 N. W. Rep. 622.

Many other decisions of the various supreme courts have been examined and might be cited or quoted from, but we think the foregoing will be sufficient to .

indicate the present state of the law applicable here. The authorities are practically unanimous in support of the proposition as stated by High, *supra*. The lack of harmony arises in the application of this principle. The doctrine that where the want of care and skill in devising the plan is so great as to constitute negligence there is liability on the part of a municipality, as expressed by the supreme court of Indiana in *City of North Vernon v. Voegler*, supra, is supported by the decision of a few other courts. The great weight of authority favors the proposition hereinbefore quoted from Wood on Nuisances.

We have reached the conclusion that the petition in this case does not state facts warranting interference by a court of equity to prevent the construction of the sewerage system according to the plan adopted by the city authorities. The decision of the district court is therefore affirmed.