MARKER, Plaintiff, v. FLEEGER, et al, Defendants.

(172 N. W. 509).

(File No. 4493.   Opinion filed May 13, 1919.  Rehearing denied June 3, 1919.)

1. Courts—Supreme Court, Original Jurisdiction Re Guardianship of Incompetent—Soldier Guardian, Expediting Final Report From Probate Court, As Grounds of Jurisdiction.

Where plaintiff, appointed guardian ·of an incompetent by probate court, thereafter enlisted in the military service of the United States, and because of such service desired ·to surrender his guardianship, and to that end was about to present his final report, ·but, believing the probate judge was disqualified to pass thereon, he requested the said judge to certify the ·hearing of his report to circuit court under the statute, said judge declining to so act; plaintiff thereafter applying ·to circuit court for an order compelling ·probate judge to so certify the record, which order circuit ·court refused, whereupon plaintiff brought an original proceeding in Supreme Court against the probate and circuit judges seeking an order such as he had sought below; held, that inasmuch as in the ordinary course of events the matter in dispute would reach a much earlier conclusion through such original proceeding than through appeal, it appearing that plaintiff because. of his enlistment could give no further personal attention to his ward, who needed continuous care, and in view of long delay through efforts to procure such order from probate court, the apparent necessity is such that no remedy is adequate which is not also speedy;' hence Supreme Court will entertain original jurisdiction.

McCoy, J.,. and Smith, P. J., dissenting.

2. Judges—Guardian and Ward—Probate Judge, Claiming Interest in Attorney's Fees, Whether Disqualified as Judge—Certification of Case to Circuit Court, Grounds For—Subsequent Waiver of Claim to Fees, Effect, Re Qualifications.

Where, pending the administration of an estate, other heirs had procured from the widow a contract. releasing her rights in the estate, and a guardian was appointed for her as an incompetent, and thereafter a suit was begun by C. as her attorney to set aside the contract under which her rights had been so transferred; she having been previously referred to C. as an attorney by B, the probate judge, and later B, under whom the administration was proceeding, communicated with . C. in-

timating that, although he was to pass on·the amount of C's attorney's fees in said suit, he did not understand he was "cut off as a forwarder of the case;" to which C. in response in substance expressed surprise at B's apparent belief that he was entitled to share in said fees, and stated. that if B. felt he had any interest therein he, C, did not want to submit to him as judge the question of fairness and reasonableness of the services, because he, B, would be disqualified to pass upon same, but that if, he, B. felt he had no interest, he would not be disqualified unless his impression that he had no interest "has been lately formed;" to which B. rejoined, expressing no surprise at C's position, but stating he had written his former letter because he had received an intimation of C's position concerning division of fees, and stating "there is no after-thought about the matter. Since you had no idea, as you write, that I was interested, you have done no wrong, you have not participated in anything that would reflect on your honor at the bar, and that being true there is no sacrifice demanded of me that your honor be sustained. As for myself I have no load of remorse to carry—I granted your client no relief she was not entitled to and was not moved by any original connection I had in the matter;" to which C. responded expressing further regret at C's·position, and referred to B's having necessarily passed upon the evidence and the question as to whether said contract was or' not valid, on ground of fraud or undue influence, that he, B, had held the contract void, and that he, C, would not have submitted these questions to B, had he supposed that B. had any thought of participating in the fees to be paid the widow's attorney, and expressing a desire to hear from him, B, "stating directly whether you claim an interest in the fees in this matter or not;'" to which B. responded acknowledging receipt of said last letter, and adding "the first paragraph thereof" (relating to regret, etc.,)' "intimates that you clearly understand my position. My letter from Chicago and the one dated here the 16th" (being the two preceding letters of B,) "can leave no doubt as to my position;" other correspondence and interviews followed, and B: having thereafter written to C. stating "I know of no law that would prevent my sitting in the trial of the Van Gerpen case" (the suit brought by C.)" in any court, save the county court of this county, * * * There is no law, therefore, that would prevent me from accepting·fees in those cases up to the time some questions connected therewith came into my court:" and finally wrote C: "A judge, by statute, enacted by pioneers in grasshopper time, and responding to the ethics of the bar and the judiciary, though he may give freely of his services and patronage, must hasten to the chambers of his court and muffle

his ears with the wig when a mention is made of the financial affairs of men. And when it is suggested that such a subject is to be certified to a higher court, the usual sensitiveness becomes hysteria. I, therefore, waive all claim to fees in the Van Gerpen case;" thereafter, and after further correspondence, refusing to certify the guardianship matter to the circuit court pursuant to an application therefor on the ground of his disqualification; thereafter application having been made to circuit court for an order requiring B. to certify up said guardianship proceedings, which application was refused, in refusing which application the circuit court judge wrote C. and B. in substance that it appeared that B. at no time was or under the statutes could be attorney for the guardian or against the executor in the circuit court proceedings, that it appeared that B. was not and never had been personally interested in the guardianship matter or in any of said proceedings in circuit court, that it did appear that B. "for a time claimed that he sent Mrs. Van Gerpen to C," and that by reason thereof, he should have a portion of the attorney's fees, however, under a statute above referred to he could have no claim for attorney's fees in as much as he could not act as attorney in any of these matters," it also appearing from the answer of B. that he now disclaimed any right to any attorney's fees; **held,** that B. was disqualified to act in matters pertaining to said guardianship; that it was not necessary for B. to have had an actual legal right to share in C's fees in order that he be so disqualified; it being the state of his mind—his belief that he was entitled thereto—that disqualified him. That the evidence shows that from the time he recommended C. to the widow, he considered he had an interest in and would eventually share in C's fees, and question of his qualification must be determined from his conceded belief; that when he sent the widow to C. expecting to share in C's fees if retained, he assumed that the relation of attorney and client existed between himself and the widow, although such relation did not in fact exist, and from that time he was as disqualified to act as a judge or court in matters in which the widow was interested, as was C, and was disqualified to make any order in either the Van Gerpen estate or in the matter of said guardianship; that no waiver or disclaimer can remove such disqualification.

McCoy, J., and Smith, P. J., dissenting.

Original proceeding in the Supreme Court in mandamus, by Roy B. Marker, as guardian of the person and estate of Henrietta Van Gerpen, an Incompetent Person, against Honorable L. L. Fleeger, as Judge of the Circuit Court within and for the County of Turner, in the Second Judicial Circuit, State of South

Dakota, and Honorable Edwin L. Brown, Judge of the County
Court within and for the County of Turner, State of South Da-
kota, to procure an order directing defendant Brown, as county
judge to certify certain guardianship proceedings to said circuit
court. Order granted.

U. S. G. Cherry, for Plaintiff.

Wagner & Danforth, for Defendant.

(1) To point one of the opinion, Defendants cited:

Everit v. Board of County Commissioners; 1 S. D. 365;
Hardy v. Purington; 6 S. D. 383; Town of Vilas v. Circuit
Court, 24 S. D. 298; The Homesteaders v. McCombe, (Okla.)
103 Pacific, 691.

(2) To point two of the opinion, Plaintiff cited:

Vine v. Jones, 13 S. D. 54.

For Defendants' citations, see cases cited to point one.

WHITING, J. The defendant Brown is now, and at all
times hereinafter mentioned has been, the judge of the county or
probate court of Turner county. Plaintiff in 1916 was duly ap-
pointed by defendant Brown the guardian of the person and
property of Mrs. Henrietta Van Gerpen, and yet remains such
guardian. Having in the year 1918 enlisted in the military service
of the United States, plaintiff desired to surrender his trust and
be discharged as such guardian. To that end he was about to
present his final report, showing, among other things, certain
anticipated disbursements for attorney fees for services that had
theretofore been rendered his ward and her estate by one Cherry.
Believing, because of certain matters that had come to his atten-
tion, that said Brown was disqualified to pass upon his report,
plaintiff asked Brown to certify the hearing of his report to the
circuit court as by statute authorized. This Brown declined to
do, claiming he was not disqualified to pass on such report. Plain-
tiff then sought an order from the circuit court compelling Brown
to certify the record in the guardianship matter to such court.
After hearing upon the merits, the circuit court refused the order
sought. Plaintiff then brought this original proceeding in this
court, making said Brown and the judge of the circuit court par-
ties, and seeking an order of this court directing the circuit court
to issue an order such as was sought in the circuit court pro-
ceeding.

Two questions are presented for our consideration: (1) Are the facts shown such as to justify this court in taking original jurisdiction instead of leaving plaintiff to his remedy by appeal? (2) Is the said Brown disqualified to act as judge in such guardianship matter?

[1] In the ordinary course of events the matter in dispute would reach a much earlier decision through this proceeding than through appeal. As above noted, plaintiff had enlisted in military service and could give no further personal attention to his ward. She is very old, feeble, and mentally incompetent, and needs the continuous care of some one. This matter has been long delayed through efforts to get Brown, without court proceedings, to certify same to the circuit court. Further delay has resulted from time given the proceedings in circuit court. We are of the opinion that the apparent necessity is such that no remedy is adequate which is not also speedy. Hence we think it clear that we would not be justified in declining to entertain this original proceeding.

[2] Is Brown disqualified to act in matters pertaining to the guardianship of Mrs. Van Gerpen? That he is so disqualified seems to us too clear for question, and we cannot but express our surprise that he considered himself, in any manner, interested in the fees earned by Mr. Cherry (a matter hereinafter disclosed), and an even greater surprise that he, believing himself interested in such fees, did not immediately, on the happening of that event upon which he based his claim of interest in such fees, certify to the circuit court all matters before him in which Mrs. Van Gerpen was interested.

These facts are undisputed: Mrs. Van Gerpen is the widow of one Frank Van Gerpen, who died leaving an estate in Turner county. Administration of this estate was commenced in the court over which Brown presides. Other heirs of Frank Van Gerpen had procured from the widow a contract, whereby she had released the rights she otherwise would have had in the estate of her former husband. Apparently she became of the opinion that she had been defrauded, and she went to Brown for advice, and, as he states in a letter to Cherry, written 2—16—18:

"The lady came to me with a case in equity to be instituted in the circuit court. I recommended you. * * *"

Mrs. Van Gerpen retained Cherry. He instituted an action in circuit court to set aside the contract under which his client had transferred her rights in her husband's estate, which estate was still in process of administration. It was while this circuit court action was pending that plaintiff, Marker, was appointed guardian for Mrs. Van Gerpen. This circuit court action was appealed to this court. Marker v. Van Gerpen, 39 S. D. 648, 166 N. W. 151. We rendered our decision therein on 1—28—18.

Such was the situation—the estate of Frank Van Gerpen un-settled and its final settlement depending entirely upon the result of the circuit court action; and Marker still the guardian for Mrs. Van Gerpen—when there came to Cherry from Brown a sug-gestion which Cherry well says "came like a flash of lightning out of a clear sky." On 2—8-18, but a very few days after the decision of this court in Marker v. Van Gerpen, supra—the cause for which Brown had recommended Cherry as attorney—Brown wrote Cherry the following letter, dated from Chicago:

"Although I am to pass on the amount of attorney's fees in the Van Gerpen case, I do not understand that I am cut off as a forwarder of the case. What is your understanding?"

On 2—9—18, Cherry answered expressing surprise at Brown's apparent belief that he was entitled to share in the fees that he (Cherry) had earned in the Van Gerpen matter, and, after stating that he never before supposed that Brown had any thought at all that he had an interest in the case as a forwarder, among other things suggested the following, which we most heartily commend:

"I certainly never supposed in the Van Gerpen case that any-thing was running in your mind, except something quite like the above. If I had supposed that you had any other thought about it, I certainly never would have brought any matter in that case before you for hearing, because I would consider that you were disqualified, and that if I took a matter before you in a case where you understood you had an interest, I would be do-ing a mighty wrong thing—as a member of the bar.

"If you feel that you have some interest in the Van Gerpen case, and you felt you had some interest in it when we submitted the matters which were passed upon by you, I certainly would

feel, Judge, as though I ought to go into court and ask for the vacation of the order, or orders.

"On the other hand, if this matter is somewhat of an after-thought in your mind, and if nothing of that kind was operating in your mind at the time we submitted the applications, it is bare-ly possible that no duty arises on our part to seek the vacation of the order—or orders—I don't remember whether there were one or two of them.

"The other thing about it that strikes me even more forcibly than the foregoing is what seems to me like a suggestion in your letter that the question of fees for myself and Mr. Marker is yet to be passed upon for our services in the case, and that you are contemplating passing upon the same, and at the same time you have an interest in them. If you feel you have any interest in the fees, then I certainly would not want to submit to you as a judge, the question of what would be fair and reasonable services, because you would be disqualified to pass upon your own case; which this would amount to. If, on the other hand, you feel that you have no interest, you would not be disqualified, unless your impression that you have no interest has been lately form-ed. If you have been entertaining the idea at any time that you are interested in these fees, then I do not want to submit that question judicially to you, because it seems to me very clear that it would be quite wrong to do so.

"All the foregoing has been suggested in perfect good spirit, but I have felt that I owed it to myself and to you to very promptly, and in a very direct and very frank way, state my views about it. * * *"

On 2—16—18, Brown answered, expressing no surprise at Cherry's position, but stating that he had written his former letter because he had received an intimation of Cherry's position on the matter of division of fees. It was in this letter that he wrote about having sent Mrs. Van Gerpen to Cherry. In answer to the part of Cherry's letter which we have just quoted he said:

"There is no afterthought about the matter. Since you had no idea, as you write, that I was interested, you have done no wrong, you have not participated in anything that would reflect on your honor at the bar, and that being true there is no sacrifice

demanded of me that your honor be sustained. As for myself I have no load of remorse to carry—I granted your client no relief she was not entitled to and was not moved by any original connection I had in the matter."

In answer to this letter Cherry wrote Brown on 2—18—18, a part of the letter being the following, which we also most heartily commend:

"I regret even more what I understand to be your position concerning this Van Gerpen case.

"In the several probate matters which were heard before you, it was necessary that you pass upon all the evidence that had been produced before Judge Tripp and upon the whole question as to whether or not the contracts which the Van Gerpens had induced this old lady to sign was valid or void on the ground of fraud or undue influence. You held, just as Judge Tripp held, that the contract was void, and that therefore the old lady was entitled to her homestead, her absolute exemptions, her maintenance and support and so on and so forth.

"I never would have submitted any of these questions to you as a judge, had I for a moment supposed that you had in your mind any thought that you were to participate in the fees to be paid to her attorney, either for procuring these orders, or for procuring the decree in the circuit court. It came like a flash of lightning out of a clear sky when I received the letter from you from Chicago, for the first time indicating that you were thinking of anything of this kind.

"It seems to me that when you think the matter over and view it from my standpoint, you will see the matter in just the light that I see it.

"Please let me hear from you, Judge, stating directly whether you claim an interest in the fees in this matter or not. Your letter of the 16th inst. is not clear to me upon this point."

In answer to this letter Brown wrote:

"Yours of the 18th inst. received. The first paragraph thereof indicates that you clearly understand my position.

"My letter from Chicago and the one dated here the 16th can leave no doubt as to my position."

Other correspondence and interviews took place, and on 7—

9—18 Brown wrote, giving his views as to his legal right to have acted for Mrs. Van Gerpen in the circuit court, and, among other things, writing:

"I know of no law that would prevent me sitting in the trial of the Van Gerpen case in any court, save the county court of this county, and this applies to the Meier case.

"* * * There is no law, therefore, that would prevent me from accepting fees in those cases up to the time some questions connected therewith came into my court."

Finally, on 7—22—18, Brown wrote Cherry as follows:

"A judge, by statute, enacted by pioneers in grasshopper time, and responding to the ethics of the bar and the judiciary, though he may give freely of his service and patronage, must hasten to the chambers of his court and muffle his ears with the wig when a mention is made of financial affairs of men. And when it is suggested that such a subject is to be 'certified' to a higher court, the usual sensitiveness becomes hysteria.

"I, therefore, waive all claim to fees in the Van Gerpen case."

Further correspondence took place extending up into September, but without any agreement on the part of Brown that he would certify the guardianship matter to the circuit court. Finally, acting upon the contention that the above facts showed Brown to be disqualified to act in the guardianship matter, the circuit court proceeding, to which we have already referred, was instituted. The views of the judge of the circuit court are clearly set forth in a letter addressed to Cherry and Brown, from which we copy the following:

"Under the record, it appears that Judge Brown at no time was an attorney for the guardian or against the executor in the proceedings in the circuit court. Under the provisions of the Political Code, he could not act as such attorney. Neither has the county judge, under the record, at any time acted as an attorney in the proceedings in the circuit court for or against any of the persons specified in section 19 of the Probate Code, as amended in 1911.

"It appears that Judge Brown is not personally interested in the guardianship matter now before him. And it appears that he

never has been personally interested in any of the proceedings in the circuit court. It does appear, from the record, that Judge Brown, for a time claimed that he sent Mrs. Van Gerpen to Mr. Cherry, and that by reason thereof, that he should have a portion of the attorney's fees. However, under the statutes above referred to, he could have no claim for attorney's fees inasmuch as he could not act as an attorney in any of these matters. It also appears from the answer of Judge Brown that he now disclaims any right to any attorney's fees."

The fundamental fact that seems to have escaped the mind of the circuit judge is that it is not necessary for Brown to have had an actual legal right to share in Cherry's fees in order that he be disqalified to act in the Van Gerpen matters. It was the state of his mind—his belief that he was entitled to share in such fees—that disqualified him. It is perfectly clear—in fact appears undisputed from Brown's own letters—that, from the time he recommended Cherry to Mrs. Van Gerpen, he considered that he had an interest in and would eventually share in the fees earned by Cherry. It matters not that he was wrong in his understanding as to his rights. The question of his qualification to sit in the matters thereafter must be determined from his conceded belief. When he sent Mrs. Van Gerpen to Cherry expecting to share in Cherry's fees if Cherry was retained, he assumed that the relation of attorney and client existed between himself and Mrs. Van Gerpen. True such relation did not in fact exist, but yet he was assuming to have the same rights as though he, as well as Cherry, had accepted an actual retainer. From that moment on he was as disqualified to act as judge or court in matters in which Mrs. Van Gerpen was interested as was Mr. Cherry. From that time he was disqualified to make any order in either the Frank Van Gerpen estate or in the matter of guardianship of Mrs. Van Gerpen. No eleventh hour waiver or disclaimer can remove such disqualification. It is absolutely repugnant to any sense of justice that one, so clearly disqualified, should adjudicate the rights of his fellows when there is another court to which the cause may be transferred.

We deem it unnecessary to reach the desired end through the medium of the circuit court. An order will therefore issue from

this court directed to the defendant Brown, and requiring him to forthwith certify the matter of the guardianship of Henrietta Van Gerpen to the circuit court of Turner county. The plaintiff shall have costs as against defendant Brown.

McCOY, J. (dissenting). Brown, as a matter of fact, never acted, or assumed to act, as attorney with Mr. Cherry for any of the parties interested in this estate. All that Brown ever did was to advise Mrs. Van Gerpen to employ Cherry. Because Mr. Cherry at some prior time had remunerated him for sending business to his office, Brown entertained the idea that Mr. Cherry might in this instance pay him something for having advised Mrs. Van Gerpen to employ him. Brown did not entertain the view that Cherry might pay him something because he had acted as attorney for Mrs. Van Gerpen in connection with Cherry, but solely and only because he had been instrumental in forwarding business to the Cherry office. It is conceded in the majority opinion that the relation of attorney and client never in fact existed between Brown and Mrs. Van Gerpen. The majority opinion states that he was assuming that such relation did exist, and was assuming to have the same rights as though he had accepted an actual retainer. This statement is untrue, and is pure fiction, not sustained by the record in this case. The only thing Brown ever did was to suggest to Cherry that he might be entitled to some remuneration for having forwarded the business. A banker or physician might, for a remuneration, forward business to a lawyer, and that certainly would not constitute the banker or the physician a lawyer, so that it could be said that he had assumed the relation of attorney with the client whose business was thus forwarded to the lawyer. The record in this case shows as a matter of fact that Brown never actually or inferentially assumed or even pretended that the relationship of attorney and client existed between himself and Mrs. Van Gerpen. The character of Judge Brown should not be crucified on any such fictitious grounds. None of the Van Gerpens or parties in interest are objecting to or questioning the right of Judge Brown to now act in the final settlement of said estate. But it is said that "it was the state of Brown's mind—his belief that he was entitled to share in such fees—that disqualified him." If Judge Brown as a matter of fact

had become an attorney for Mrs. Van Gerpen, and had shared in the fees, as such attorney, along with Mr. Cherry, which he had a right to do, but did not, as said equity case was not in the county court, he would have been disqualified. Even if he had been in fact attorney for Mrs. Van Gerpen in that case, he might not have been of evil judicial mind; but the law, based on public policy, says:

"You shall not act as judge in respect to those matters involved in your relationship as such attorney."

It is the interest of the attorney in the result of the litigation—the confidential knowledge of facts acquired by him as such attorney, that forms the reason and basis of the public policy of the law that by construction prohibits such attorney from afterwards acting as judge concerning the same matters involved in the attorneyship, regardless of whether or not he might be of evil judicial mind, for the law constructively implies such evil-mindedness from such conditions. But in a case where it is conceded that the relation of attorney and client never existed, as a matter of fact, and where the attorney never had any kind of interest in the litigation, and never acquired any confidential knowledge as attorney or otherwise, that by any reasonable possibility could bias or prejudice his judicial mind, it would be a wild stretch of imagination that would apply the rule of constructive evil-mindedness to such circumstances. There is no foundation of fact for the constructive inference that the mind of Judge Brown is not what it should be in reference to the Van Gerpen estate. That his mind is not right, as stated by the majority opinion, is based on pure fiction—something that never did exist.

It is true that Judge Brown may be in a position to pass upon the fees and charges, which have already been allowed to Mr. Cherry by the plaintiff, Marker, who was associated with Mr. Cherry in the law business, in the Cherry law office, at the time Mr. Cherry secured his, Marker's, appointment as guardian of Mrs. Van Gerpen, but that surely would not by any possibility work any prejudice against the parties in interest who are entitled to the proceeds of this estate on final distribution.

Assuming that we are in error in everything we have heretofore said herein, still we are of the view that the following is a

full, complete, and absolute answer to the contentions of the plaintiff. Prior to instituting this as an original action in the Supreme Court, precisely the same action had been instituted in the circuit court on the same grounds and demanding the same relief, and after regular hearing, and finding in favor of Judge Brown upon the merits, an order was made by that court denying plaintiff the demanded relief, from which order and judgment no appeal has ever been taken. If the plaintiff had not taken action in the circuit court, but had taken his first action in this court, then this court might have taken jurisdiction for like reasons, as was done in Huron v. Campbell, 3 S. D. 309, 53 N. W. 182. There can be no question but what under section 2, art. 5, Const:, this court has a superintending control over inferior courts in addition to its general appellate jurisdiction; but I am of the view that such superintending control should be exercised in accordance with the laws of the land, and not according to any autocratic or arbitrary rule; that under the guise of such superintending control this court does not have jurisdiction to vacate and override the final judgments of inferior courts having jurisdiction of the parties and subject-matter. This plaintiff having elected to invoke the jurisdiction of the circuit court, at a time when the jurisdiction of this court might have been invoked, and having therein tried out, in the circuit court, the merits of the action to final determination and judgment, and lost, and not having appealed, the judgment of that court became final and conclusive, subject only to be set aside on the ground of extrinsic fraud or mistake. This is the distinguishing difference between this case and the Huron v. Campbell Case. In that case the application for mandamus against the inferior court was initiated in the first instance in this court. But it is said that the court should take jurisdiction of this case, notwithstanding the judgment in the circuit court, because of an apparent necessity and emergency arising from the fact that plaintiff was about to be called into the military service of the United States, which would render an appeal from the circuit court judgment not an adequate or speedy remedy. While the record does not disclose the exact date when the action was commenced in the circuit court other than that it was about the 1st of October, 1918, yet the record does show that the said judgment of that court was rendered on the 23d day of October,

1918. The same necessity—the same emergency which is now made the ground for holding that the remedy by appeal is not adequate because not speedy, existed at the time the action was commenced in the circuit court. An affidavit of plaintiff purporting to have been sworn .to on August 10, 1918, states .that affiant had tendered his services for the period of the war to the government of the United States, and had been accepted, and was then under orders of the proper officers to report at Camp Pike on the 12th day of August, 1918. With full knowledge of the existence of the said necessity an emergency the plaintiff then elected to proceed in the circuit court, and therein tried out the merits of the controversy. No new or other or different emergency has arisen since said election so made to institute said action in the circuit court. From the record it appears that this action was instituted in the Supreme Court on the 13th day of November, 1918, at a time after the signing of the armistice, which had the effect of eradicating the existence and necessity of the plaintiff's having to render war service. I am therefore of the view that under the circumstances of this case the plaintiff had a perfectly adequate remedy by appeal from the judgment of the circuit court; that such remedy would have been as speedy and as adequate as the present procedure, and that the judgment of the circuit court became and was an effective final judgment, conclusive upon the plaintiff, until reversed on appeal or set aside for extrinsic fraud or mistake.

The peremptory mandamus should be denied.

SMITH, P. J., concurs in dissent.